Steven A. JONES, Plaintiff,

v.

Otis BOWEN, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. No. 86–3565–Y.

United States District Court, D. Massachusetts.

Feb. 10, 1988.

---

Roger J. Brunelle, Worcester, Mass., for plaintiff.

Andrew Hogeland, Asst. U.S. Atty., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This is an action under § 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a "final decision" of the Secretary of Health and Human Services awarding Steven Jones disability benefits for a closed period beginning May 20, 1985 and ending June 30, 1986.

## I. BACKGROUND

The following facts are undisputed. Prior to the accident that is the springboard for the instant litigation, Mr. Jones was employed as a heavy laborer, primarily in general construction, roofing, painting, masonry, and sheet metal work. (Tr. at 15) On May 20, 1985, Mr. Jones, then 24 years old, was severely injured in a 30 foot fall from a scaffold on which he was working. Mr. Jones' injuries consisted primarily of numerous fractures involving his sacrum, superior pubic ramus, vertebrae, left wrist and right heel. Mr. Jones received extensive medical treatment involving three operations in the months following the accident.

In June, 1985, Mr. Jones filed simultaneous applications for a period of disability and for disability insurance benefits (Title II benefits) and for Supplemental Security Income (Title XVI benefits), alleging an inability to work since May 20, 1985. (Tr. at 55–58) The applications were denied initially (Tr. at 65) and on reconsideration (Tr. at 73) by the Social Security Administration. However, at a hearing on April 24, 1986, the Administrative Law Judge considered the case *de novo* and, in a decision dated July 1, 1986, found that Mr. Jones was "disabled" within the meaning of the Social Security Act from May 20, 1985 through June 30, 1986, but not thereafter. (Tr. at 12–20) The Appeals Council approved the Administrative Law Judge's decision on October 15, 1986 (Tr. at 4), rendering it the final decision of the Secretary of Health and Human Services, and therefore subject to judicial review.

Mr. Jones appealed. Both parties agree that Mr. Jones was disabled from May 20, 1985 until June 30, 1986. What is disputed is whether Mr. Jones has remained disabled after that time.

## II. APPLICABLE LAW

In reviewing a final decision of the Secretary terminating benefits, focus is properly placed on whether that decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Lizotte v. Secretary of Health and Human Services*, 654 F.2d 127, 128

(1st Cir.1981); *Miranda v. Secretary of Health, Education and Welfare,* 514 F.2d 996, 998 (1st Cir.1975). In *Miranda,* the First Circuit held that "once having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify so doing."[1] *Miranda,* 514 F.2d at 998. Substantial evidence is that evidence that " 'a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 [1938] ). In the termination context, substantial evidence "will normally consist of current evidence showing that a claimant has improved to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was at first supposed." *Miranda,* 514 F.2d at 998.

In his report dated July 1, 1986, the Administrative Law Judge found that Mr. Jones was totally disabled until June 30, 1986. As of that date, the Administrative Law Judge further found that Mr. Jones had regained the residual functional capacity necessary to perform a sedentary exertional level of work activity and accordingly terminated his benefits. (Tr. at 20)

■ Having found that Mr. Jones was once disabled, however, the Administrative Law Judge was required to justify his termination of Jones' benefits by substantial evidence. This Court has searched the record in vain for such evidence, or indeed any evidence suggesting that Mr. Jones has recovered sufficiently so as to be no longer eligible for disability benefits.

The most recent, as well as the most optimistic, medical report before the Administrative Law Judge was that submitted by Dr. George E. Lewinnek, Mr. Jones' orthopaedic surgeon, on May 13, 1986, summarizing the examination of Mr. Jones on March 31, 1986. Dr. Lewinnek reported:

1) that Mr. Jones' left wrist had only half the normal range of motion (and that with slight discomfort), that the condition was stable, and that no further treatment was planned unless the symptoms worsened;

2) that despite a laminectomy to free the sacral nerve roots, Mr. Jones' sensation to his buttock and posterior left thigh was impaired and that this condition was also stable;

3) that Mr. Jones' right ankle had near normal range of motion, that the pain in his right foot and leg remained but had decreased in intensity, that he still walked with a single crutch, and that no treatment was planned although Mr. Jones would be reevaluated in June;

4) that no further surgery was planned; and

5) that Mr. Jones remained disabled for all work requiring prolonged standing or walking.

(Tr. at 158)

The Administrative Law Judge appears to have fully credited Dr. Lewinnek's report, adopting the doctor's findings in his Summary and Evaluation of the Evidence. The Administrative Law Judge further found that Mr. Jones was disabled at the time of the examination (March 31, 1986), at the time of the hearing (April 26, 1986), and indeed through June, 1986. While his report provided substantial evidence for that finding, it provides no support for the

---

1. Admittedly, *Miranda,* and indeed most cases involving the termination of benefits are ones in which the benefits were originally granted in an earlier, separate proceeding, unlike the instant case where the disability benefits were in effect awarded and terminated in the same proceeding. However, nothing of importance turns on this distinction. *Cf. Richardson v. Heckler,* 750 F.2d 506, 509–10 (6th Cir.1984) (holding that even if no previous proceeding had established that the plaintiff was disabled, once it is shown at the present proceeding that the plaintiff was

disabled at some earlier point in time, a presumption still arises that, in the absence of proof to the contrary, the disability continues); *Rivas v. Weinberger,* 475 F.2d 255, 258 (5th Cir.1973) (same); *Prevette v. Richardson,* 316 F.Supp. 144 (D.S.C.1970) (same). It should be noted that *Miranda* does not speak in terms of presumptions. Rather, it does away with any burden of proof analysis, requiring simply that, once having found a disability, the Secretary must meet the usual substantial evidence burden.

finding that, as of June 30, 1986, Mr. Jones ceased to be disabled. Dr. Lewinnek's report is notable for its lack of expectation of future improvement. Mr. Jones' various conditions are termed "stable"; no treatment or further procedures are planned. Indeed, only a reevaluation visit set for June is on the horizon.[2] The "negative pregnant" of Dr. Lewinnek's fifth conclusion is not supportable. That is, it cannot logically be argued that, since Dr. Lewinnek found Mr. Jones disabled for all work requiring prolonged standing or walking, he is therefore able to engage in substantial gainful activity not involving those activities. Clearly, then, if this report established to the Administrative Law Judge's satisfaction that Mr. Jones remained disabled as of March 31, 1986, and the report by its own terms states that no improvement was expected, the report can provide no evidence that Mr. Jones' disability ceased as of June 30, 1986.

The Administrative Law Judge did examine Mr. Jones at the hearing on April 26, 1986. (Tr. at 26–54) He found, however, that Mr. Jones was still disabled at that time and the transcript of that hearing reveals no substantial evidence that Mr. Jones' condition would soon improve. Mr. Jones stated that no further surgery was planned. While Mr. Jones did state that he planned to have physical therapy, he did not know when such therapy would begin nor exactly what it would entail. (Tr. at 52) Again, inasmuch as the Administrative Law Judge determined that Mr. Jones was disabled as of the date of the hearing, and the only indication that his condition might improve was that an unknown regimen of physical therapy was to commence at an unspecified time in the future, no substantial evidence that he would no longer be disabled as of June 30, 1986 was adduced at the hearing.

The only other pieces of evidence in the record that might remotely be thought to support the Administrative Law Judge's termination of benefits are two predictions made by one of Mr. Jones' doctors more than ten months before the Administrative Law Judge's decision and a statement made by a doctor employed by the Massachusetts Rehabilitation Commission (the "Commission") more than eleven months before the Administrative Law Judge's decision. On July 16, 1985, Dr. Robert G. Weiner, one of Mr. Jones' orthopaedic surgeons, stated that Mr. Jones would remain disabled "for approximately another six months minimum." (Tr. at 16, 116) On July 22, 1985, Dr. Rolf Baginski, an internist employed by the Commission, stated that Mr. Jones' full recovery was expected within twelve months of the date of the accident. (Tr. at 18, 59–64) On August 6, 1985, Dr. Weiner opined that Mr. Jones would remain totally disabled "for a period of up to six months." (Tr. at 154) However, the statements of Dr. Weiner and Dr. Baginski were made more than two months before further x-rays revealed a complete transverse fracture of an additional vertebra (the S2 vertebra), a more extensive fracture of the sacrum, avascular necrosis of the navicular (left wrist), malunion of the os calcis (right heel) fracture operated on previously, and osteoperosis of the right foot. (Tr. at 16–17, 117–18, 120) Mr. Jones required two operations in the fall of 1985, at least in part to address these newly-discovered problems. (Tr. at 17) Because of the intervening and apparently unforeseen complications that attended Mr. Jones' recovery in the late summer and fall of 1985, the predictions of these two doctors carry little weight.[3] Most significant-

---

**2.** The record does not contain any information pertaining to that evaluation, if indeed it did take place.

**3.** Indeed, Dr. Baginski's prediction appears to be premised on his belief at the time that Mr. Jones' fractures were and would continue "heal[ing] in a normal fashion." (Tr. at 61) The persuasiveness of Dr. Baginski's estimate is also diminished inasmuch as he is not an orthopaedist, but an internist.

Far better evidence in the record is the estimate of Dr. Lewinnek. Dr. Lewinnek, who appears to have replaced Dr. Weiner as Mr. Jones' orthopaedic surgeon in the late summer or early fall of 1985 (Tr. at 16), opined on January 21, 1986—after Mr. Jones' additional surgery—that Mr. Jones would be incapacitated from performing full-time gainful work for one year or more. (Tr. at 155)

ly, the Administrative Law Judge himself rejected these predictions by his very decision in which he found that Mr. Jones was totally disabled substantially longer than even the longest of the doctors' estimates.

■ In sum, there is here no evidence at all—much less any substantial evidence—that Mr. Jones' disability ceased as of June 30, 1986. As the Secretary bears the burden of proof on this point, *Miranda*, 514 F.2d at 998, and has adduced no evidence thereon, the result below is unsupported.

### III. CONCLUSION

No substantial evidence supports the Administrative Law Judge's conclusion that Mr. Jones was then capable of engaging in substantial gainful activity. The most recent medical evidence dating from March 31, 1986, as well as the Administrative Law Judge's own examination of Mr. Jones on April 26, 1986, persuaded him that Mr. Jones was disabled as of those dates. The record is entirely devoid of new evidence or indeed any evidence that improvement in Mr. Jones' condition occurred or was imminent.

This Court therefore orders that the decision of the Secretary be REVERSED and REMANDED to the Secretary with an order to enter an open-ended award for disability benefits to Mr. Jones.[4] Such order does not, of course, impair the right of the Secretary to assess Mr. Jones' benefits once again should he come to believe that Mr. Jones' condition is such that there ought be some change in his benefits.

---

4. Because this Court holds that Mr. Jones is entitled to receive disability benefits due to the lack of substantial evidence that he is no longer disabled, Mr. Jones' other claim—that the Secretary erroneously applied the Medical–Vocational Guidelines to his claims—need not be reached.