Janice D. JENNINGS, SSN:
051–54–9106, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant.

No. CIV 87–1884 PCT CAM.

United States District Court,
D. Arizona.

Dec. 22, 1988.

Alan M. Schiffman, Schiffman, Hozier & Kurth, P.C., Phoenix, Ariz., for plaintiff.

John Robert Mayfield, Steven A. Keller, U.S. Atty., Phoenix, Ariz., for defendant.

## ORDER

MUECKE, District Judge.

This case is an example of the disregard the Secretary of Health and Human Services has come to have for the judicial precedents and intra-departmental rules that are to guide social security disability benefit decisions. The record shows that the Secretary was more concerned with making a policy decision to deny benefits than following rules and precedents in reviewing an administrative record.

Twice the Appeals Council reviewed favorable decisions on its own motion and twice the Appeals Council found that there was no substantial evidence for granting plaintiff disability benefits. In its later decision, the Appeals Council disregarded plaintiff's testimony of her pain, the credibility findings of the Administrative Law Judge (ALJ), the findings of plaintiff's treating physician, and its own rule regarding persons who are incapable of prolonged periods of sitting. These legal errors, and the lack of substantial evidence in the record, require this Court to grant plaintiff's motion for summary judgment, deny defendant's cross-motion for summary judgment, and remand this case back to the Secretary for an immediate award of benefits.

## BACKGROUND

Plaintiff filed an application for disability benefits on April 9, 1986. The claim was initially denied and after reconsideration. Claimant timely filed a request for a hearing. On January 20, 1987, Administrative Law Judge Silbert awarded plaintiff disability benefits. On its own motion, the Appeals Council reviewed the decision, found that an award was not based upon substantial evidence, and remanded the case for a new decision.

A second hearing was held before Administrative Law Judge Smelkinson. Plaintiff testified at this hearing and was represented by counsel. A summary of plaintiff's testimony and the exhibits introduced at the hearing follows.

Plaintiff is a married woman. Plaintiff has completed high school and has accumulated twelve hours of college credits. Plaintiff last worked as a stocker in a Walgreen's warehouse. She stopped working on September 13, 1984. Prior to her job as a stocker, plaintiff worked as line worker for an electronics company, a waitress, and as an inspector for an electronics company.

On September 14, 1984, plaintiff injured herself when jumping down from a shelf at the warehouse. Plaintiff thought that the pain would go away, but it did not. Medical testing showed that plaintiff suffered a herniated disc at the L5–S1 level, on the right. In November, 1984, plaintiff underwent a hemilaminectomy and discectomy at the right L5–S1 level; hemilaminectomy at the L4–5 level, right; facetectomy at the right L4 level; and a foraminotomies at the right L5–S1 level.

After the surgery, plaintiff continued to experience pain in her lower right extremities. A sciatic tension test performed in January, 1985 showed that plaintiff still had pain radiating into her right thigh. An epidural steroid injection was administered in March, but the pain returned by April. On June 10, 1985, Dr. Abeshaus discontinued plaintiff's physical therapy because of the pain.

An August, 1985 CT scan showed that plaintiff still had a ventral defect at L5–S1.

A physical examination showed that plaintiff had hypalgesia in the S1 distribution, absent achilles reflex on the right, and moderate weakness of plantar flexion. Dr. Ritland, a neurosurgeon and plaintiff's treating physician, stated that on the AMA scale, plaintiff had a fifteen percent disability rating as of October 7, 1985. On August 20, 1986, however, Dr. Ritland concluded that plaintiff had a twenty percent disability rating. Dr. Ritland stated that he believes that plaintiff still has a compression of the S1 and possibly a mild compression of the L5 nerve roots.

Dr. Ritland opined that plaintiff could only perform light physical activity because of her pain and restrictive movement in her back. In filing out a form on plaintiff's ability to do work-related activities, Dr. Ritland stated that plaintiff could only occasionally lift ten to twenty pounds. If plaintiff were forced to walk on the job, she could only walk ten minutes without interruption and at most one hour during an eight hour shift. If plaintiff were required to sit on the job, plaintiff could only sit for fifteen minutes without interruption and for only four to five hours in an eight hour shift.

Plaintiff was also examined by Dr. Broky. He states that plaintiff can sit for approximately an hour. If plaintiff stands, she can only stand for ten minutes because of the pain and weakness. Dr. Broky states that repetitive movements causes low back pain and that the pain limits movement of plaintiff's spine. According to Dr. Broky, plaintiff can rotate her back only fifty percent of normal. Dr. Broky further states that plaintiff has weakness in her right knee stabilizers, weakness in the plantar and dorsiflexors of the right foot and ankle, and that she cannot use her right leg for repetitive movements.

During her second hearing before an administrative law judge, plaintiff testified that she feels a numbness from her right hip down to her right foot. Any bending or stretching increases the pain. Plaintiff testified that if she sits for more than fifteen or twenty minutes, the pain increases. If plaintiff stands for five or ten minutes, the

pain increases and she feels as if there is too much pressure on her back. To decrease the pain, plaintiff has taken Tylenol with codeine and Decadron.

Plaintiff stated that she can only walk two or three blocks without rest. If plaintiff stands or uses her right leg too much, the leg gets tired and it gives way to the point that plaintiff feels as if she will fall. Stretching on her toes creates spasms in her leg. Plaintiff also testified that if she lifts more than five pounds she has spasms. In a usual night, plaintiff gets four to five hours of sleep, experiences leg cramps, and is awakened three to five times.

After considering all the evidence, Administrative Law Judge Smelkinson made two findings. First, he found that because of her recurrent herniated disc, plaintiff met the requirements of Listing 1.05C.[1] The ALJ found that plaintiff's herniated disc caused pain, limitation of motion, muscle weakness, and sensory and reflex loss. Secondly, he found that plaintiff could not perform sedentary work on a sustained basis and has been unable to do so since September 17, 1984. The ALJ found that the limitations in the record were credible and that plaintiff could not use her right upper or lower extremities for repetitive movements; weight lifting was restricted; that sitting, standing, and walking were significantly limited; and that plaintiff could not perform sedentary work on any basis. The judge found that plaintiff could not return to any of her former jobs.

On its own motion the Appeals Council reviewed the record and reversed. The Appeals Council found that plaintiff did not meet the requirements under Listing 1.05C. Plaintiff's impairments were deemed to be "not attended by the criteria specified in section 1.05C ... and that the reported clinical findings and laboratory test results do not show that she has an impairment, or combination of impairments medically equivalent in severity to those contemplated in Appendix 1." The Appeals Coun-

cil also found that the "medical evidence does not establish a medical condition that could be reasonably expected to produce the degree of symptomatology alleged." The Appeals Council concluded that plaintiff has the residual functional capacity to perform sedentary work and could perform her old job as a line worker.

## ANALYSIS

■ The scope of review of disability determinations is limited. This Court cannot disturb the finding of the Secretary unless it is based on legal error or the Secretary's findings are not supported by substantial evidence. *See Smith v. Bowen,* 849 F.2d 1222, 1224 (9th Cir.1988). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Howard v. Heckler,* 782 F.2d 1484, 1487 (9th Cir.1986) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). In assessing whether a finding is supported by substantial evidence, this Court must consider the record as a whole. *See Smith,* 849 F.2d at 1225.

■ This Court reviews the findings of fact made by the Secretary and not the ALJ. *See Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 386 (6th Cir.1978). Thus, the Appeals Council can make findings of fact that differ from those of the ALJ. *See id.* The Appeals Council commits legal error, however, if its findings contradict those of the ALJ and the findings of the Appeals Council are not supported by fully articulated reasons.

■ In this case, the Appeals Council reached a different credibility determination without specific findings, failed to make specific findings on plaintiff's pain, and disregarded the testimony of Dr. Ritland, plaintiff's treating physician. These three legal errors require reversal as a

---

1. Listing 1.05C deals with vertebrogenic disorders. A person has a vertebrogenic disorder if they have the following symptoms that persist over three months despite therapy and the symptoms are expected to last up to twelve

months: (1) pain, muscle spasms, significant loss of motion in the spine; and (2) appropriate radicular distribution of significant motor loss with muscle weakness and sensory reflex loss. The person must satisfy both categories.

matter of law. *See Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir.1988) (disregard of pain testimony requires reversal), *modified,* 859 F.2d 1396 (9th Cir.1988) (court granted petition for rehearing on remand issue and ordered case remanded for immediate payment of benefits) (hereinafter *Varney II* ).

A. *The Credibility Findings of the ALJ*

██ If the Appeals Council makes a finding that is contrary to finding of credibility by the ALJ, the Appeals Council must fully articulate its reasons for disagreeing with the ALJ and those reasons must be supported by substantial evidence in the record. *See Smith,* 849 F.2d at 1226 (claimant's contentions as to the frequency and severity of seizures); *Williams v. Bowen,* 844 F.2d 748, 754 (10th Cir.1988) (Appeals Council must state reasons for disagreeing with ALJ's finding of credibility on claimant's pain); *Beavers,* 577 F.2d at 387 (Appeals Council must identify the considerations which led to its conclusion). Because the ALJ can see the demeanor of the witnesses and assess how the testimony fits with the rest of the evidence, special deference should be given to the ALJ's credibility determinations. *See Williams,* 844 F.2d at 755. The ability of the ALJ to observe the demeanor of the witness may actually undercut the substantial evidence supporting the Appeals Council's contrary finding. *See id.*

██ The Appeals Council should have given the ALJ special deference because he could see the demeanor of plaintiff and assess how her testimony fit with the rest of the record. *See Williams,* 844 F.2d at 755. Deference is particularly appropriate because an important issue in this case is whether plaintiff can sit for any sustained period of time. Plaintiff's conduct during the hearing before the ALJ clearly shows that she cannot sit for any substantial length of time. Because the ALJ saw the plaintiff during the hearing, this undercut the substantial evidence, if any, supporting the Secretary's decision. *See Williams,* 844 F.2d at 755.

In reaching his decision, the ALJ heard plaintiff's testimony, evaluated her credibility, and determined the interrelationship of her testimony to the statements by her doctors. The ALJ impliedly found plaintiff's testimony concerning pain to be credible because he found that plaintiff experienced pain. Dr. Abeshaus stated that a sciatic nerve test proved positive for pain radiating into plaintiff's right thigh. The ALJ actually saw the plaintiff repeatedly stand and sit during the hearing because of the pain.

In addition, the ALJ found that plaintiff's limitations were credible. The ALJ considered plaintiff's statements that she could not sit for more than fifteen or twenty minutes without pain, that her right leg gives way if she stands on it too much, and that any bending or stretching increases the pain. Plaintiff's testimony was supported by Dr. Ritland who stated that plaintiff could not sit for more than fifteen minutes without interruption, that she could only walk for ten minutes without interruption, and that she could only occasionally lift ten to twenty pounds. The evidence in the record shows that there is a close fit between plaintiff's testimony and other statements in the record. Instead of fully articulating its reasons for disagreeing with the ALJ, the Appeals Council simply recited the evidence in the record and reached a contrary conclusion. It is legal error for the Secretary to simply disagree with the credibility finding of an ALJ without fully articulating its reasons. *See Smith,* 849 F.2d at 1226. The Secretary's legal error is compounded by his failure to afford the ALJ any deference.

B. *Plaintiff's Allegations of Pain*

██ The Appeals Council cannot simply dismiss a claimant's allegations of pain. Subjective pain testimony is an important factor in the disability determination process. *See Varney,* 846 F.2d at 583. The Secretary must consider pain testimony if it is associated with medical impairments that could reasonably be expected to produce the pain or symptoms alleged. *See id.* The allegations of pain must be

completely unsubstantiated by *any* objective evidence before they can be disregarded. *See id.* at 583–84 (emphasis in original). Pain is a highly idiosyncratic thing that varies according to each individual's threshold and stamina. *See id.* at 584. The Secretary cannot require that the impairment inevitably cause the pain described. *See id.* Pain testimony must be considered so long as the pain is associated with a clinically demonstrated impairment. *See id.* If a claimant testifies that his or her pain is greater than the impairment would normally be expected to produce, then the Secretary is presented with a case of excess pain testimony. *See id.*

 In order to disregard excess pain testimony, the Secretary must make specific findings. *See id.* The refusal to isolate particular complaints and discuss the evidence suggesting that the complaints were not credible is reversible error. *See id.* The Secretary cannot simply disregard or minimize the claimant's pain testimony into nonexistence. *See Williams,* 844 F.2d at 754. The failure of the ALJ to fully articulate reasons for refusing to credit a claimant's subjective pain testimony requires the Secretary, as a matter of law, to accept that testimony as true. *See Varney II,* 859 F.2d at 1398. Therefore, when the ALJ has accepted the claimant's pain testimony and the Appeals Council has rejected the claimant's pain testimony, the Appeals Council must also fully articulate reasons for refusing to credit the claimant's subjective pain testimony. If the Appeals Council fails to fully articulate reasons for rejecting the claimant's pain testimony, this Court, as a matter of law, will accept the claimant's pain testimony as true.[2]

 The Appeals Council committed legal error by disregarding plaintiff's testimony concerning her pain. Because of the reports from Drs. Ritland and Broky, there is objective evidence of a vertebrogenic disorder. Both doctors testified that plaintiff has a recurrent herniated disc. Dr. Abesh-

aus stated that a sciatic test confirmed that plaintiff experienced pain in her right leg. Thus, it was clearly legal error for the Council to simply conclude that "[t]here is no medical condition that could reasonably be expected to produce the pain of the severity alleged."

The Appeals Council totally disregarded precedents holding that pain is an idiosyncratic thing that varies according to each individual's threshold and stamina. *See Varney,* 846 F.2d at 584. Even if the Appeals Council believed that plaintiff's pain exceeded that which her impairment would normally produce, the Appeals Council was obliged to make specific findings as to why it disregarded plaintiff's allegations. *See id.* Here, the Appeals Council should have isolated particular complaints and discussed the evidence showing that the statements of pain were not credible. *See id.* Instead, the Appeals Council committed legal error by disregarding or minimizing plaintiff's pain testimony into nonexistence. *See Williams,* 844 F.2d at 754. Given the Appeals Council's failure to articulate reasons for rejecting plaintiff's pain testimony, this Court will accept plaintiff's testimony as being true.

C. *The Testimony of Plaintiff's Treating Physician*

 The Secretary can also commit reversible error by disregarding the testimony of the claimant's treating physician. The Secretary must give the medical opinion of the treating physician special weight. *See Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir.1988). In order to disregard the opinion of the treating physician, the Secretary must set forth specific, legitimate reasons for doing so that are based upon substantial evidence in the record. *See Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir.1987). The Secretary can meet this burden by setting forth a thorough and detailed summary of the facts, the conflicting clinical evidence, stating his interpreta-

---

**2.** This result seems only logical because the Appeals Council can make findings of fact that differ from the ALJ. *See Beavers,* 577 F.2d at

386. This Court, in turn, reviews the findings of the Secretary and not the ALJ. *See id.*

tion of the evidence, and making findings. *See Embrey*, 849 F.2d at 421.

In this case, the Secretary clearly disregarded the statements of Dr. Ritland, plaintiff's treating physician. In its decision, the Appeals Council latches on to Dr. Ritland's statement that plaintiff is able to perform "only light physical activity." From this statement, which is taken out of context, the Appeals Council concludes that plaintiff can perform her old job and that she has the residual capacity to perform sedentary work.

In making these two findings, the Appeals Council contradicts statements made by Dr. Ritland. According to the Appeals Council's opinion, plaintiff's former job was for eight hours. Dr. Ritland states that plaintiff can sit for a maximum of four to five hours during an eight hour period and for only fifteen minutes without interruption. He further stated that plaintiff could walk for a maximum of one hour and for only ten minutes without interruption. The sum of Dr. Ritland's statements is that plaintiff could be at work a maximum of six hours (five hours sitting and one hour walking).

■■■ The Appeals Council failed to state how plaintiff could perform her job when she repeatedly had to get up or be seated every ten or fifteen minutes. In order to conclude that plaintiff could do her old eight hour per day job, the Appeals Council, *a fortiori*, contradicted the statements of plaintiff's treating physician. Yet the Appeals Council failed to set forth specific, legitimate reasons for concluding that plaintiff could work an eight hour day. *See Sprague*, 812 F.2d at 1230. The Secretary committed legal error by not including a detailed summary of facts, a summary of conflicting clinical evidence, an interpretation of the evidence, and then making findings that plaintiff could work for eight hours. *See Embrey*, 849 F.2d at 421.

■■■ The Appeals Council also committed legal error by concluding that plain-

tiff had the residual functional capacity to perform sedentary work. If a claimant is "able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting[,] ... [s]uch an individual is not functionally capable of doing ... the prolonged sitting contemplated in the definition of sedentary work...." *See* Soc.Sec.Ruling 83–12. Unskilled jobs are structured such that a person cannot ordinarily sit or stand at will. *See id.* In such a case, a vocational specialist should be consulted to clarify the implications of the occupational base. *See id.* The Secretary commits legal error by applying the sedentary work category to a person who cannot perform the work within this category for more than a brief period. *See Cavitt v. Schweiker*, 704 F.2d 1193, 1195 (10th Cir. 1983).

■■■ Dr. Ritland stated that plaintiff could only sit for fifteen minutes without interruption and then for a maximum of four or five hours in an eight hour day. There no evidence contradicting this. In order to apply the sedentary work category to this particular case, the Secretary would have to state legitimate reasons for contradicting Dr. Ritland or produce a vocational expert to state what sedentary jobs in the national economy plaintiff could perform. The Secretary did neither.[3]

## CONCLUSION

The Secretary weakly argues that there is substantial evidence in the record supporting its decision. As the analysis on the applicability of the sedentary work category shows, however, there is not substantial evidence supporting this decision. The Court is at a loss to know how a person who experiences pain when walking, stretching, and sleeping; only has 50% movement in her back; bouts with muscle spasms in her sleep and when picking up over five pounds; no achilles reflex; and cannot use her right foot for walking except on her toes; does not also have pain,

---

3. Because of plaintiff's problem in having to alternatively sit and stand, there is no substantial evidence in the record supporting the Secretary's conclusion that plaintiff can perform sed-

entary work. *See Cavitt*, 704 F.2d at 1195 (insufficient evidence to support the conclusion that claimant could perform sustained sedentary work).

muscle spasms, significant limitation of movement in the spine, and motor loss with muscle weakness and sensory reflex loss. *See* 20 C.F.R. Part 404, Subpart P. App. 1, 1.05C (vertebrogenic disorders).

The record in this case shows that the Secretary committed legal error by disregarding plaintiff's pain testimony without specific findings, impliedly rejecting the credibility findings of the ALJ without specific findings, and disagreeing with the statements of Dr. Ritland without specific findings. This Court has discretion to either remand the case to the Secretary for additional evidence or simply award benefits. *See Varney II,* 859 F.2d at 1399; *Sprague,* 812 F.2d at 1232. Given the Secretary's track record in this case and the Court's discretion, the Court concludes that it is appropriate to remand this matter for an award of benefits. *See Johnson v. Harris,* 625 F.2d 311, 313 (9th Cir.1980) (where claimant made prima facie showing of disability and the Secretary failed to rebut the showing or show that specific jobs existed, case remanded to enter judgment in favor of claimant). Therefore,

IT IS ORDERED that plaintiff's motion for summary judgment is granted, defendant's cross-motion for summary judgment is denied, and that this matter be remanded to the Secretary for immediate payment of benefits.