**Robert DEDIS, Plaintiff,**

v.

**Shirley CHATER, Commissioner of the Social Security Administration, Defendant.**

**Civil Action No. 95–30243–MAP.**

United States District Court,
D. Massachusetts.

Feb. 11, 1997.

Neil E. Onerheim, Nathanson, Wessler & Onerheim, Lawrence, MA, Robert E. Grey, Grey & Grey, Farmingdale, NY, for Robert Dedis.

Karen L. Goodwin, United States Attorney's Office, Springfield, MA, for Shirley S. Chater.

PONSOR, District Judge.

This Recommendation is hereby ADOPTED, without objection. The Commissioner's Motion to Affirm (Dkt. No. 10) is DENIED. The plaintiff's Motion for Judgment (Dkt. No. 9) is ALLOWED, in part. The clerk will enter judgment for plaintiff. So ordered.

*REPORT AND RECOMMENDATION WITH REGARD TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (Docket No. 09) AND DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (Docket No. 10)*

December 30, 1996

NEIMAN, United States Magistrate Judge.

## I. INTRODUCTION

This matter is before the Court pursuant to 42 U.S.C. § 405(g) which provides for judicial review of a final decision by the Defendant Commissioner of the Social Security Administration ("Commissioner") regarding an individual's entitlement to disability benefits. Plaintiff Robert Dedis ("Plaintiff") is seeking Social Security Disability Insurance ("SSDI") benefits. Plaintiff alleges that the Commissioner's decision limiting such benefits to a closed period of time is not supported by substantial evi-

dence and has moved, pursuant to Fed. R.Civ.P. 12(c), to reverse and remand the decision. In turn, the Commissioner has moved for an order affirming her decision. The parties' motions have been referred to the Court for a report and recommendation pursuant to Rule 3 of the Rules of the United States Magistrates in the United States District Court for the District of Massachusetts. 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the Court recommends that the Commissioner's motion be denied and that the Plaintiff's motion be allowed in part, granting him an extended closed period of benefits, but otherwise denied.

## II. PROCEDURAL BACKGROUND

Plaintiff was born on January 6, 1947 and has one year of college education. (Administrative Record ("A.R.") at 248.) His work experience includes approximately nineteen years in banking where he worked from 1970 to 1989 as an assistant bank manager, a senior bank examiner and a loan review officer. (A.R. at 249–55.) Plaintiff filed an application for SSDI benefits on July 19, 1990, alleging an inability to work since November 2, 1989 due to an injury to his neck, left leg and left foot following a motor vehicle accident. (A.R. at 68, 120.) On February 10, 1992, an Administrative Law Judge ("ALJ") granted Plaintiff's application, but only for the closed period of time from November 2, 1989 to August 20, 1991. (A.R. at 18.) Following denial of his request for review before the Appeals Council, Plaintiff sought judicial review in the District Court for the Eastern District of New York and the case was remanded by agreement of the parties pursuant to the terms of a class action settlement, *Stieberger v. Sullivan*, 792 F.Supp. 1376 (S.D.N.Y.1992). (See A.R. at 3–4, 349–50.)

On March 23, 1995, following a second hearing on December 14, 1994, the ALJ again determined that Plaintiff was entitled to SSDI for the same closed period of time only. (A.R. at 224–34.) On September 16, 1995, the Appeals Council declined Plaintiff's request for review, rendering the ALJ's March 23, 1995 decision the final decision of the Commissioner. (A.R. at 204–06.) Plain-

tiff, having moved to Massachusetts in the interim, then filed his complaint in this Court.

## III. DISABILITY STANDARD

A claimant is entitled to SSDI benefits if he is under a disability prior to the expiration of his insured status. See 42 U.S.C. § 423(a) and (d); *Torres v. Secretary of Health & Human Services*, 845 F.2d 1136, 1138 (1st Cir.1988); *Cruz Rivera v. Secretary of Health & Human Services*, 818 F.2d 96, 97 (1st Cir.1986). The Act defines disability, in applicable part, as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). An individual is considered disabled under the Act

only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See generally *Bowen v. Yuckert*, 482 U.S. 137, 146–48, 107 S.Ct. 2287, 2293–95, 96 L.Ed.2d 119 (1987). The Commissioner uses a sequential five-step analysis to determine whether a claimant is disabled. See *Goodermote v. Secretary of Health & Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982) (citing 20 C.F.R. § 404.1520). See also *McDonald v. Secretary of Health & Human Services*, 795 F.2d 1118, 1120 (1st Cir.1986).

Once benefits are awarded, they may be terminated only if "a claimant has improved to the point of being able to engage in substantial gainful activity" or if his or her "condition is not as serious as was at first supposed." *Miranda v. Secretary of Health, Ed. & Welfare*, 514 F.2d 996, 998 (1st Cir.

1975). In essence, the Commissioner's regulations require (1) that there be improvement in a claimant's medical condition and (2) that the improvement relate to the claimant's ability to work. 20 C.F.R. § 404.1594(b)(1).[1] While most termination cases concern benefits awarded in a previous proceeding, such cases may also include a situation, like here, "where the disability benefits were in effect awarded and terminated in the same proceeding." *Jones v. Bowen*, 679 F.Supp. 133, 135 n. 1 (D.Mass.1988). However, as described in *Jones*, "nothing of importance turns on this distinction." *Id.*

### IV. STANDARD OF REVIEW

■ Once a disability is found, the Commissioner's decision to terminate benefits, including limiting benefits to a closed time period, must be grounded in substantial evidence. *Jones*, 679 F.Supp. at 135 n. 1. See 42 U.S.C. § 405(g). Cf. *Richardson v. Heckler*, 750 F.2d 506, 509–10 (6th Cir.1984) (even if no previous proceeding established that plaintiff was disabled, once it is shown that plaintiff was disabled at some earlier point in time, a presumption arises that, in the absence of proof to the contrary, the disability continues). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Rodriguez v. Secretary of Health & Human Services*, 647 F.2d 218, 222 (1st Cir.1981). Here, that conclusion revolves around medical improvement.

■ The Supreme Court has defined substantial evidence as " 'more than a mere scintilla.' " *Perales*, 402 U.S. at 401, 91 S.Ct. at 1427 (quoting *Consolidated Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). That is, even if the record could support multiple conclusions, a court must uphold the Commissioner " 'if a reasonable mind, reviewing the evidence in the record as a whole, could

accept it as adequate to support h[er] conclusion.' " *Ortiz v. Secretary of Health & Human Services*, 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez*, 647 F.2d at 222); see also *Perales*, 402 U.S. at 401, 91 S.Ct. at 1427. At bottom, a court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the record could arguably justify a different result. *Rodriguez Pagan v. Secretary of Health & Human Services*, 819 F.2d 1, 3 (1st Cir.1987).

### V. PLAINTIFF'S MEDICAL EVIDENCE

As indicated, Plaintiff was injured in an automobile accident on November 2, 1989, and was thereafter diagnosed with a dislocation of a joint in his left foot, muscle spasms and slight degenerative changes confirmed by a series of x-rays. (A.R. at 119–23.) On December 8, 1989, Plaintiff sought treatment from Dr. Shafi Wani, a neurologist, for pain and stiffness in his neck and right shoulder, and for pain in his right hand and left leg. (A.R. at 148–50.) Dr. Wani diagnosed Plaintiff with cervical and right shoulder strain, radicular symptoms in the right upper extremities and decreased cervical motion. (Id.) Later, on January 8, 1990, an electromyogram revealed to Dr. Wani that Plaintiff was afflicted with right wrist median nerve dysfunction and mild right carpal tunnel syndrome. (A.R. at 170–71.) Still later, on April 11, 1990, a magnetic resonance imaging of Plaintiff's spine disclosed several herniated discs. (A.R. at 174.) In December of 1990, Dr. Wani diagnosed Plaintiff with "myofascial pain syndrome" and carpal tunnel syndrome on his right side. (A.R. at 156–57.)

On January 25, 1990, Dr. M. Ather Mirza, an orthopedic surgeon, began treating Plaintiff for pain and numbness in his right hand. (See A.R. at 186–87.) Dr. Mirza also diagnosed Plaintiff as suffering from carpal tunnel syndrome and, on April 16, 1991, Plaintiff underwent surgery for relief. (Id.) Due to

---

1. Medical improvement is defined by the regulations as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." The regulations go on to state that "[a] determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1).

complicating conditions revealed by surgery, however, Dr. Mirza was unable to state the complete degree of Plaintiff's disability and functional limitations. (A.R. at 185.) During this period, Plaintiff was also receiving physical therapy. (See A.R. at 187.)

Dr. Wani continued to see Plaintiff through the spring of 1991, during which time Plaintiff complained of continued pain in his neck, shoulder and right hand. (See A.R. at 164–67, 201.) In May of 1991, Dr. Wani assessed that Plaintiff (1) could occasionally lift five to ten pounds, and (2) could sit for only twenty to thirty minutes at a stretch for a total of two to three hours in an eight hour day, but (3) was unlimited in his ability to stand and walk. (A.R. at 175–77.) On March 18, 1992, after a follow-up examination, Dr. Wani concluded that Plaintiff "cannot return to his work which involves prolonged sitting, leaning over, writing and working with telephones." (A.R. at 380–81.)

Throughout 1992 and 1993, Dr. Wani continued to report clinical findings of reduced cervical motion, cervical stiffness and tenderness, difficulty with right wrist motion and right hand pain. (See A.R. at 363–79.) Although Plaintiff's condition remained essentially unchanged into 1994, on September 21, 1994, in a second assessment, Dr. Wani found Plaintiff improved to the point that he could (1) lift fifteen pounds occasionally and ten pounds frequently, (2) sit for forty-five to sixty minutes at a time for a total of four to five hours during an eight hour work day, and (3) stand and walk for unlimited amounts of time. (A.R. at 360–62.) Plaintiff was, however, somewhat limited in reaching with his right arm and performing pushing and pulling motions. (Id.)

Other relevant medical evidence comes from a single examination of Plaintiff on August 21, 1991, by Dr. Bert S. Horwitz, the Commissioner's orthopedic consultant. (A.R. at 188–89.) Although Dr. Horwitz's examination revealed a mild restriction of mobility, he noted Plaintiff's ability to make a good fist as well as "normal ... motor, sensory and reflex activities" in Plaintiff's upper extremities. (Id.) Dr. Horwitz also found Plaintiff's ability to lift and carry objects to be only mildly affected, i.e., a thirty pound limit for occasional lifting and a five to ten pound limit for frequent lifting. (Id.) In addition, he did not find any limits on standing, sitting or walking and believed Plaintiff had only mild difficulty in reaching, handling, pushing and pulling. (Id.)

At the administrative hearing, Plaintiff testified that, to reduce pain and inflammation, he takes three medications—Anexsia, Flexeril, and Meclomen—which cause various side effects including drowsiness and stomach cramps. (A.R. at 263–66.) Plaintiff also testified that he uses a wrist brace and lies down in a recliner to relieve his pain. (A.R. at 266–67, 277–78.) Plaintiff asserted as well that his condition has left him unable to participate in personal activities he once enjoyed, such as golfing, racket ball, tennis, boating, fishing and going to the movies. (A.R. at 278–79.) Finally, Plaintiff stated that he is unable to contribute to heavy household chores, which are left to his wife and son. (A.R. at 269–73, 278.)

## VI. THE ALJ'S DECISION

As indicated, the ALJ found after the second hearing on December 14, 1994, that Plaintiff was still only disabled from November 2, 1989 through August 20, 1991. In so finding, the ALJ, after comparing Dr. Wani's September 21, 1994 assessment of Plaintiff's improved physical capabilities with Dr. Horwitz's prognosis of August 21, 1991, concluded that "Dr. Wani's September 1994 assessment of physical capabilities ... clearly establishes work-related medical improvement that reasonably can be related to August 1991." (A.R. at 230.) The ALJ also determined that Plaintiff's incapacitating symptoms, such as pain, weakness, numbness, drowsiness and nausea, were no longer credible. (A.R. at 233.) Although ruling that Plaintiff was unable to perform relevant medium work, the ALJ determined that Plaintiff had regained sufficient capacity as of August 21, 1991, the date of Dr. Horwitz's exam, to perform the less demanding work of his earlier positions of assistant bank manager and senior bank examiner. (A.R. at 230, citing 20 C.F.R. § 404.1594(f)(6) and (7)).

## VII. DISCUSSION

At the core of the parties' respective arguments are three distinct time periods. The first time period runs from November 2, 1989, the day of Plaintiff's accident, to August 21, 1991, the date of Dr. Horwitz's consultative examination. There is no dispute between the parties that Plaintiff was disabled during this period. The second time period spans August 21, 1991 to September 21, 1994, the date of Dr. Wani's second assessment of Plaintiff's physical capabilities. As indicated, the ALJ tied Dr. Wani's second assessment to Dr. Horwitz's August 21, 1991 favorable prognosis and denied Plaintiff disability benefits past August 21, 1991. The third time period runs from September 21, 1994 forward.

The Commissioner argues that the ALJ's findings of medical improvement by the end of the first time period are supported by substantial evidence in the record and that the termination of benefits thereafter should be affirmed. In essence, the Commissioner asserts that there is substantial evidence in the record to demonstrate that Plaintiff's medical condition had improved sufficiently as of August 21, 1991, to enable him to participate in gainful activity.

In response, Plaintiff asserts that the Commissioner's decision regarding medical improvement is not supported by substantial evidence. More specifically, Plaintiff argues that the Commissioner (1) erred when substituting her own opinion for three years (1991–1994) of uncontradicted medical evidence by Dr. Wani, Plaintiff's treating physician, (2) failed to fully evaluate and compare the requirements of Plaintiff's former work with his residual functional capacity, and (3) improperly evaluated Plaintiff's subjective complaints of pain after August 21, 1991. In general, the Court agrees with Plaintiff's first two assertions, but not the third.

### A. Second Time Period: August 21, 1991 Through September 21, 1994

■ In making his decision limiting Plaintiff's benefits to the first time period only, the ALJ tied Dr. Wani's second assessment of Plaintiff on September 21, 1994 to Dr. Horwitz's favorable prognosis of August 21, 1991—thereby enabling the ALJ to conclude, as he had in his original decision, that benefits should be granted only for the closed period of November 2, 1989 to August 21, 1991. This, the Court believes, was error, for in doing so the Commissioner in essence substituted her own opinion for three years of uncontradicted intervening medical evidence provided by Dr. Wani.

■ It is apparent from the record that Dr. Wani's assessment on September 21, 1994 marks, at best, the culmination of Plaintiff's improved physical status since the accident causing his disability in November of 1989. (A.R. at 360–62.) As Dr. Wani's notes reveal in the three years following Dr. Horwitz's August 21, 1991 examination, Plaintiff was incapable of making substantial physical movements, such as lifting heavy objects, sitting or standing for prolonged periods of time, or engaging in fine motor skills, such as writing for more than one minute. (See A.R. at 39–43, 195–98, 363–81.) All of these limitations affected Plaintiff's ability to return to work in the banking industry, which requires workers to lift files, write and sit for extended periods of time. (See A.R. at 363–381.) To disregard such evidence was wrong. "While the ALJ is free to make a finding which gives less credence to certain evidence, he cannot simply ignore . . . the 'body of evidence opposed to [his] view.'" *Diaz v. Secretary of Health & Human Services,* 791 F.Supp. 905, 912 (D.P.R.1992) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951)). As a result, the ALJ here wrongfully substituted his own judgment for that of Dr. Wani, the treating physician. See *Rosado v. Secretary of Health & Human Services,* 807 F.2d 292, 293–94 (1st Cir.1986). See also *Heggarty v. Sullivan,* 947 F.2d 990, 996 (1st Cir. 1991) ("An 'ALJ is simply not at liberty to substitute his own impression of an individual's health for uncontroverted medical opinion.'") (quoting *Carrillo Marin v. Secretary of Health & Human Services,* 758 F.2d 14, 16 (1st Cir.1985) (per curiam) and citing *Nieves v. Secretary of Health & Human Services,* 775 F.2d 12, 14 (1st Cir.1985)).

This error is particularly troublesome since the findings of a treating physician are usually given more weight than the findings of a non-treating physician when the treating physician has in fact provided a detailed, longitudinal picture of medical impairments. See 20 C.F.R. § 404.1527(d)(2). Dr. Wani, Plaintiff's treating physician, brought a unique perspective to the medical evidence that Dr. Horwitz, the Commissioner's non-treating physician consultant, simply did not have. See id. Nonetheless the ALJ appears to have placed more weight on Dr. Horwitz's single consultative examination than on the medical conditions actually documented by Plaintiff's treating physician over the ensuing three years, as if Dr. Horwitz accurately predicted medical improvement.

There are several additional reasons why Dr. Horwitz's testimony does not warrant this degree of reliance. First, Dr. Horwitz affirmed that he possessed a "hazy" recollection of his examination of Plaintiff, apparently due, in part, to the fact that he met Plaintiff only once. (A.R. at 49.) Second, although he had copies of Dr. Wani's records, Dr. Horwitz did not consult the documents prior to Plaintiff's examination. (A.R. at 50.)[2] Third, Dr. Horwitz did not recall whether Plaintiff was on any medication to control his pain, although he inferred from a small notation made during the examination that Plaintiff was on some type of medication. (A.R. at 52–53.)

In short, since Dr. Horwitz's positive prognosis of medical improvement was not in fact borne out, his testimony and examination were inadequate to support the ALJ's conclusion that Plaintiff had improved sufficiently *as of August 21, 1991* to engage in substantial gainful activity.[3] In other words, a reasonable mind would not be able to support the ALJ's extensive reliance on Dr. Horwitz to the exclusion of Dr. Wani's conflicting medical reports.[4]

## B. Third Time Period: Beyond September 21, 1994

■ The Court has determined that the ALJ's reliance on Dr. Wani's second assessment of September 21, 1994—although not its retroactive application to the date of Dr. Horwitz's exam—was appropriate. Indeed, Plaintiff appears to concede as much. Thus, the Court believes that there is substantial evidence in the record that Plaintiff's medical conditions had improved sufficiently enough *as of* September 21, 1994 to enable him to engage *thereafter* in substantial gainful activity. Stated another way, even though there is no substantial evidence to support the ALJ's conclusion that Plaintiff could have engaged in gainful activity as of August 21, 1991, the day of Dr. Horwitz's consultative examination, that same conclusion is adequately supported as of September 21, 1994.

### 1. Medical Improvement as of September 21, 1994

As indicated, Plaintiff's condition had substantially improved as of September 21, 1994. Thus, although Plaintiff continued to experience slight difficulty in pushing, pulling and reaching with his right arm, he was able to lift fifteen pounds occasionally and ten pounds frequently, sit for forty-five to sixty

---

**2.** When queried about this, Dr. Horwitz conceded "I don't believe that the reports of Dr. Wani [a board certified neurologist] would have been of great help to me in terms of the conduct of my examination and my conclusions." (A.R. at 51.) Later Dr. Horwitz stated that even if the neurologist's reports could have helped him, the aid would have been "fairly small." (A.R. at 52.)

**3.** If anything, Plaintiff's condition as of August 21, 1991 may simply have been an "[impairment subject to temporary remission]" pursuant to 20 C.F.R. § 404.1594(c)(3)(iv). As that regulation states:

In some cases the evidence shows that an individual's impairments are subject to temporary remission. In assessing whether medical improvement has occurred in persons with this type of impairment, we will be careful to consider the longitudinal history of the impairments, including the occurrence of prior remission, and prospects for future worsenings. Improvement in such impairments that is only temporary will not warrant a finding of medical improvement.

**4.** In light of the lack of sufficient medical improvement prior to Dr. Wani's second assessment of September 21, 1994, the Court need not analyze Plaintiff's ability to work *prior* to that date. Suffice it to say that Plaintiff's physical condition, established by the objective medical tests of Dr. Wani, had not sufficiently changed. (See A.R. at 148–50, 170–71, 194–201, 363–81.)

minutes at a time for a total of four to five hours in an eight-hour work day, and stand and walk for unlimited amounts of time. This was a significant improvement over his ability in 1991 to lift only five to ten pounds occasionally and sit for only twenty to thirty minutes at a time for a total of two to three hours in an eight hour work day. As a result, Plaintiff's medical improvement, as of September 21, 1994, was significant enough to address the second step in the analysis: whether Plaintiff was able to engage in substantial gainful activity as of that date. See *Miranda*, 514 F.2d at 998.

### 2. *Ability to Work as of September 21, 1994*

■ Under the Commissioner's regulations, the ALJ is entitled to find that a claimant is capable of performing his past relevant work if he can perform any of the types of work he performed in the last fifteen years. See 20 C.F.R. § 404.1565(a); *Gray v. Heckler*, 760 F.2d 369, 371 (1st Cir.1985); S.S.R. 86–8 (Cum.Ed.1986). Here, Plaintiff's employment over the last fifteen years consisted of two positions: a senior bank examiner (1977—February 1989) and a loan review officer (February 1989—November 1989).[5]

There is no dispute that Plaintiff always possessed the *mental* skills of either of these positions. The Court finds that there is also substantial evidence in the record of Plaintiff's *physical* ability to perform such work, particularly that of a senior bank examiner, as of September 21, 1994. First, in being able to lift ten pounds frequently and fifteen pounds occasionally, there can be no question that Plaintiff was able to meet the lifting requirements of a senior bank examiner, a "sedentary" position. See 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like

docket files, ledgers and small tools."); cf. Def's Motion, Exhibit B (*Dictionary of Occupational Titles*), ¶ 160.167–046 (describing position of chief bank examiner).

Second, Plaintiff could also meet the sitting requirements of his job. When Plaintiff worked as a senior bank examiner, he was required to sit for six and one-half hours during a seven hour work day, (A.R. at 253–54), another indication that his position was "sedentary," see 20 C.F.R. § 404.1567(a) (sedentary job is "one which involves sitting ... [and] walking and standing are required occasionally"); S.S.R. 83–10 (Cum.Ed.1986) (in determining sedentary work "standing and walking should generally total no more than about 2 hours of an 8–hour workday and sitting should generally total approximately 6 hours of an 8–hour workday"). This is not much more than the five hours of sitting Dr. Wani said Plaintiff was capable of as of September 21, 1994. (A.R. at 361.) To the extent Plaintiff's sitting requirements exceeded his capabilities, this Court is of the opinion that Plaintiff could meet the sitting requirements of his job by alternating between sitting and standing almost every hour. For example, a bank could accommodate Plaintiff's condition by allowing him to work seated and then complete other tasks standing in order to reduce any possible pain. Indeed, there is substantial evidence to find that such arrangements were possible since (1) Plaintiff's work was generally outside secure bank areas where limited space might otherwise prohibit excessive movement of employees, (A.R. at 254), (2) Plaintiff's position as a senior bank examiner, as well as his role as a loan review officer, allowed for practically unfettered walking when he was not attending to business (A.R. 253–254, 257), and (3) there is no dispute that Plaintiff could stand and walk for unlimited amounts of time.[6]

---

**5.** The Court notes that Plaintiff's position of assistant bank manager, which he held from 1970 through 1977, is not applicable to this analysis, it being past the fifteen year time period for past relevant work.

**6.** The limitations placed on Plaintiff's ability to sit and work are distinguishable from cases cited by Plaintiff, which refer to similar limitations

placed on unskilled laborers. See *Shiner v. Heckler*, 608 F.Supp. 481, 484 (D.Mass.1985) (plaintiff insulation worker could not sit longer than ten minutes and had to lie down periodically to relieve pain); *Jennings v. Bowen*, 703 F.Supp. 833, 840 (D.Ariz.1988) (plaintiff stocker and line worker could only sit for fifteen minutes per sitting, four to five hours a day); *Poindexter v. Bowen*, 685 F.Supp. 1545, 1553 (D.Wyo.1988)

Finally, as for Plaintiff's hand, the Commissioner could properly rely on Dr. Wani's September 21, 1994 report as well as Plaintiff's own testimony regarding outside activities, such as cleaning, shopping, caring for pets, and driving. In sum, there is substantial evidence that, as of Dr. Wani's September 21, 1994 assessment, Plaintiff was able to resume his past relevant work.

### C. *Plaintiff's Subjective Complaints of Pain*

 Finally, the Court finds that the ALJ properly considered Plaintiff's subjective complaints of pain, at least as of the date of Dr. Wani's September 21, 1994 assessment, pursuant to *Avery v. Secretary of Health & Human Services,* 797 F.2d 19 (1st Cir.1986). See 42 U.S.C. § 423(d)(5)(A). In particular, *Avery* requires the consideration by the ALJ of the following: (1) the nature, location, onset, duration, frequency, radiation, and intensity of pain; (2) any precipitating or aggravating factors; (3) the type, dosage, effectiveness and adverse side-effects of any pain medication; (4) any treatment, other than medication, for the relief of pain; (5) any functional restrictions; and (6) the claimant's daily activities. *Id.* at 29. See 20 C.F.R. § 404.1529(c)(3). It is up to the ALJ, however, to make credibility determinations. See *Rodriguez,* 647 F.2d at 222. See also *Gray,* 760 F.2d at 374; *DaRosa v. Secretary of Health & Human Services,* 803 F.2d 24, 26 (1st Cir.1986); *Bianchi v. Secretary of Health & Human Services,* 764 F.2d 44, 45 (1st Cir.1985).

The ALJ, in the present matter, thoroughly questioned Plaintiff with regard to his daily activities, functional restrictions, medications, prior work record, and the frequency and duration of pain in conformity with the guidelines set out in *Avery.* (A.R. at 249–60,

274–89, 355–81.) In particular, the ALJ heard Plaintiff testify that he was unable to engage in heavy household chores or any of his former recreational activities; that pain occurs in his neck, upper back, and wrist when he stands or writes for extended periods of time; that he wears a wrist brace as needed to deal with the pain; and that he has taken several medications, Anexsia, Flexeril, and Meclomen, as well as aspirin, to help manage the pain. (A.R. at 263–268, 277–79.) There was also evidence that Plaintiff had engaged in physical therapy to regain more complete use of his hand. (A.R. at 187.) The ALJ, however, concluded that Plaintiff's claims of "ongoing ... incapacitating symptomatology" simply were not credible. (A.R. at 232.)

Of course, a claimant's ability to participate in limited household chores, in and of itself, does not prove he has the ability to perform substantial gainful activity. Cf. *Anderson v. Secretary of Health and Human Services,* 634 F.Supp. 967 (D.Mass.1984). However, the Court does not believe it appropriate to question the ALJ's findings of credibility, to which considerable deference is due, particularly after Dr. Wani's second assessment. In short, there is substantial evidence of record to support the ALJ's analysis under *Avery* insofar as it pertains to the time period commencing on September 21, 1994.

### VIII. CONCLUSION

 For the foregoing reasons, the Court recommends that the Commissioner's motion to affirm her decision be DENIED. Concomitantly, the Court recommends that Plaintiff's motion for judgment on the pleadings be ALLOWED in part, i.e., that the Commissioner be ordered to provide Plaintiff

---

(plaintiff oil field worker could not sit six hours even with occasional standing or walking); *Troupe v. Heckler,* 618 F.Supp. 248, 254 (S.D.N.Y.1985) (plaintiff machine operator and construction worker could only sit "for less than six hours in an eight-hour workday"). Unskilled

. labor centers around repetitive movements which allow for very little accommodation in job description. See *Jennings,* 703 F.Supp. at 840 (noting that "unskilled jobs are structured such that a person cannot ordinarily sit or stand at will"); Soc. Sec. Ruling 83–12.

with an extended closed period of benefits for the second time period, but otherwise DENIED.[7]

7. The parties are advised that under the provisions of Rule 3(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party who objects to these findings and recommendations must file a written objection with the Clerk of this Court within ten (10) days of the party's receipt of this Report and Recommendation. The written objection must specifically identify the portion of the proposed findings or recommendations to which objection is made and the basis for such objection. The parties are further advised that failure to comply with this rule shall preclude further appellate review by the Court of Appeals of the District Court order entered pursuant to this Report and Recommendation. See *Keating v. Secretary of Health & Human Services,* 848 F.2d 271, 275 (1st Cir.1988); *United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1st Cir.1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1st Cir.1982); and *Park Motor Mart v. Ford Motor Co.,* 616 F.2d 603, 604 (1st Cir.1980). See also *Thomas v. Arn,* 474 U.S. 140, 154–55, 106 S.Ct. 466, 474–75, 88 L.Ed.2d 435 (1985). A party may respond to another party's objections within ten (10) days after being served with a copy thereof.