Gadson v. Callahan                    CV-96-355-M    08/26/97

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Frederick Gadson

    v.                                    Civil No. 96-355-M

John J. Callahan, Commissioner
Social Security Administration[1]


**O R D E R**


    Frederick Gadson moves pursuant to 42 U.S.C.A. § 405(g) to reverse the Commissioner's decision denying him supplemental security income benefits.  He asserts that the Commissioner's decision is not supported by substantial evidence in the record. The Commissioner moves to affirm the decision.  For the reasons that follow, the Commissioner's decision is reversed and remanded for further consideration.


**Background**

    Frederick Gadson applied for supplemental security income benefits on September 29, 1993, claiming a disability that began on September 28 (after last working in August 1993).  From February to August 1993, Gadson worked as an office assistant at a law firm.  He based his disability claim on physical imitations due to heart and back conditions as well as emotional problems.

---

[1]  The President appointed John J. Callahan as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater.  Pursuant to Fed. R. Civ. P. 25(d)(1), John J. Callahan is thus substituted for Shirley S. Chater as the defendant in this action.

## Heart Condition

In 1966, when Gadson was sixteen, he underwent surgery to repair a ventricular septal defect (abnormal opening) in his heart. Gadson's medical records, from the mid 1980's through the period relevant to his application for benefits, show that he experienced chest pain of varying degrees and heart palpitations. Diagnostic testing revealed some irregularities. He had also been a smoker for ten to fifteen years. Dr. Richard Boss, a cardiologist, concluded in March 1994 that Gadson's chest pain was due to musculoskeletal rather than cardiac causes. Tylenol, or similar medication, was recommended as needed. Because of continued chest pain, Gadson underwent a Thallium exercise test on November 23, 1994, which showed a fair exercise capacity and normal blood circulation in response to exercise. Despite some abnormalities in his resting electrocardiogram, Dr. Boss concluded that the test was negative.

Gadson saw his treating physician, Dr. Florio, on November 30, 1994, and expressed concern about his electrocardiogram and continuing chest pain. Dr. Florio noted that Gadson had increased risk factors for heart disease and recommended cardiac rehabilitation and baby aspirin. Gadson reported chest and shoulder pain after each cardiac rehabilitation session. Dr. Florio recommended that he continue using Amitriptyline, which had been prescribed for his back pain, and Tylenol.

## Back Condition

Gadson experienced ongoing back problems, beginning after a back injury at work in 1987, that were exacerbated by an automobile accident in February 1993. He was treated by Dr. Hoke Shirley, an orthopaedist, and Dr. Ashcliffe, a chiropractor. After the accident, Dr. Shirley diagnosed a soft tissue injury and prescribed Amitriptyline (antidepressant used to treat chronic pain) to be taken at bed time. In June 1993, Dr. Shirley recommended that Gadson begin a physical therapy program.

In late August 1993, Gadson complained of neck pain and severe headaches as well as severe aching into his mid-back area and worsened lower back pain. Dr. Shirley nevertheless noted that Gadson was continuing with physical therapy and seemed to be doing better. The physical therapy was changed to a work tolerance program in mid-September. A physical therapy progress report dated September 27, 1993, assessed Gadson's work ability as part time--four hours per day at a sedentary exertional level.

On September 28, 1993, Dr. Shirley examined Gadson and decided he could not continue with the work tolerance program due to the pain he was experiencing. His examination, however, revealed no focal neurological deficits in Gadson's legs and other testing was negative. Dr. Shirley nevertheless wrote that he believed Gadson was totally disabled from any significant gainful employment despite physical therapy or medication.

Dr. Shirley saw Gadson on May 20, 1994, for complaints of back pain. His examination found mild muscle tenderness in the back but again the "flip test," straight leg raising test and

3

neurological examination were normal.  Dr. Shirley recommended physical therapy, a daily walking program, and prescribed Flexeril, a muscle relaxant.

Gadson saw Dr. Shirley in December 1994 to follow up his previous diagnoses of soft-tissue cervical pain dysfunction syndrome and mechanical thoracic lumbar pain.  Gadson explained that he had discontinued his stretching exercises because of angina attacks.  Dr. Shirley's objective findings on examination were muscle tenderness but not as prominent as previously found.  Dr. Shirley found both the flip and straight leg raising tests negative and also found a good range of motion in the cervical spine.  He diagnosed chronic soft-tissue pain syndrome and substantial mechanical back pain syndrome involving cervical, thoracic and lumbar regions.  He concluded that Gadson had reached an endpoint in his improvement, that he should continue to take Amitriptyline and to do stretching exercise.  In a letter dated December 11, 1995, Dr. Shirley again gave his opinion that Gadson was unable to maintain full-time work due to his back conditions and chronic pain.

Psychological Condition

In November 1994, Dr. Florio recommended that Gadson receive psychotherapy.  Gadson began treatment with Dr. Frank Birmingham, MSW, Ph.D. on December 15, 1994.  Dr. Birmingham diagnosed adjustment disorder with depressed mood.  A letter from Dr. Birmingham dated January 23, 1995, states that he had seen Gadson

4

twice.  Based on those visits, Dr. Birmingham wrote that they had identified strong stresses in Gadson's life due to family problems, physical pain, insomnia, depression, and unemployment causing lowered self-esteem.  Dr. Birmingham also concluded that Gadson's cognitive and manual skills were limited based on the fact that he had been able to achieve a typing rate of only twenty-five words per minute despite fairly intensive training.  His opinion was that due to Gadson's psychological condition, it would be nearly impossible for him to find and maintain employment.

The Hearing

A hearing before an Administrative Law Judge (ALJ) was held on February 14, 1995.  Gadson testified that he was born on April 25, 1950, and he was 44 years old at the time of the hearing.  He obtained his high school GED degree in 1986.  He had not worked since August 1993 and was waiting to hear from New Hampshire Vocational Rehabilitation to see if they could assist him.  Before August 1993, he held a variety of jobs including custodial positions and, most recently, an office job that involved carrying files up and down stairs as well as data entry.  He said he had difficulty with both the physical demands of the office work and the typing required for data entry.  At the time of the hearing, he lived in Concord, New Hampshire, with his wife who received workers' compensation benefits that were the family's only source of income.

Gadson testified that pain in his back was constant but was aggravated by bending or walking for more than fifteen minutes. He also described pain in his left shoulder and neck if he reached above his shoulder. He said that sitting for more than fifteen or twenty minutes made his legs stiff and numb so that he had to stretch in order to move around again. He said that pain in his lower back made his legs weak and that when he climbed or descended stairs, he limped and needed to pull himself along with the bannister. He explained that because of his wife's disability, he does the family's grocery shopping once a month. He said that he had difficulty lifting grocery bags and that after two or three trips with bags he was unable to continue due to weakness in his back, neck, and shoulders. At the time of the hearing, Gadson was attending the cardiac rehabilitation clinic at Concord Hospital, and he described his difficulty and the pain associated with the exercises in the clinic.

In addition to physical pain, Gadson testified that he had been experiencing depression and was being treated by Dr. Birmingham. He explained that he had been depressed since being with his brother when he died in Chicago in August 1994. He also testified that he had difficulty getting along with other people and for that reason did not associate with others.

Gadson described his daily activities as beginning with showering, drinking coffee, and dressing which he described as slow. He then made breakfast for himself and his wife and was able to do the dishes for five or ten minutes by leaning on the

sink.  He said that he was not able to do other household chores.
He was able to drive, although with difficulty, but could drive
to his therapy at the hospital and to the store.  He did the
family's cooking, shopping, and laundry at the Laundromat.

The Determination

In a decision issued on October 26, 1995, the ALJ found that
Gadson had severe impairments related to his heart condition and
chronic back strain, and that he was unable to perform any of his
past work.  The ALJ did not find Gadson's testimony regarding the
pain he was experiencing to be credible.  The ALJ concluded that
Gadson was capable of performing a full range of sedentary work,
and based on the Medical-Vocational Guidelines, 20 C.F.R. Part
404, Subpt. P, App. 2 ("the Grid"), for a person of his age and
with a high school education, determined that he was not
disabled.  His application for SSI benefits was denied.  The
Appeals Council denied review in May 1996.

## Standard of Review

After a final determination by the Commissioner and upon
request by a party, the court is empowered "to enter, upon the
pleadings and transcript of the record, a judgment affirming,
modifying, or reversing the decision of the Secretary, with or
without remanding the cause for a rehearing."  42 U.S.C.A. §
405(g).  The Commissioner's factual findings are conclusive if
supported by substantial evidence.  Id.; Irlanda-Ortiz v.

7

Secretary of H.H.S., 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); see also Rodriguez Pagan v. Secretary of H.H.S., 819 F.2d 1, 3 (1st Cir.1987).

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence, settle credibility issues, and draw inferences from the record evidence. Ortiz, 955 F.2d at 769; Burgos Lopez v. Secretary of H.H.S., 747 F.2d 37, 40 (1st Cir. 1984). The court will defer to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. Frustaglia v. Secretary of H.H.S., 829 F.2d 192, 195 (1st Cir. 1987). Accordingly, the Commissioner's decision to deny benefits will be affirmed unless it is based on a legal or factual error. Manso-Pizarro v. Secretary of H.H.S., 76 F.3d 15, 16 (1st Cir. 1996).

## Discussion

Gadson's application for benefits was denied at the fifth step of the sequential analysis for evaluating disability. 20 C.F.R. § 416.920(f). At step five, the Commissioner has the burden of showing that despite the severity of the claimant's impairment and inability to return to past relevant work, he is able to perform other work. Heggarty v. Sullivan, 947 F.2d 990,

8

995 (1st Cir. 1991). Gadson contends that the Commissioner did not meet his burden in this case because no substantial evidence supports the ALJ's determinations pertaining to his physical and mental impairments and because the grid was not appropriately used to decide that he was not disabled.

## A. Physical Impairments

### 1. Heart Condition

The objective medical evidence in the record and the diagnoses of Gadson's treating physicians demonstrate that Gadson has a heart condition caused by a faulty mitral valve and a residual ventricular septal defect following the surgical repair in 1966 that cause a backflow of blood during heart contraction. The physicians found no cardiac dysfunction, however, and concluded that Gadson's complaints of chest pain are not caused by his cardiac condition. Thus, substantial evidence in the record does support the ALJ's conclusion that Gadson's heart condition precludes work that would require heavy exertional levels, but does not otherwise limit his capacity for sedentary work.

### 2. Back and Neck Condition

The ALJ found that Gadson was impaired by chronic cervico-lumbrosacral strains. He also found that Gadson's complaints of pain were not credible, and decided that Gadson was capable of a full range of sedentary work activity.

In reaching his determination regarding Gadson's residual functional capacity for sedentary work, the ALJ primarily relied on a functional capacity assessment by Gadson's physical therapists in September 1993. The referenced assessment dated September 27, 1993, concluded that Gadson was then capable of sedentary work only part time--for a four hour period. The ALJ explained the part-time limitation by interpreting the physical therapist's notes to suggest that Gadson "would be able shortly to do sedentary work on a full-time basis." The note that discusses a potential for full-time work actually says, "At this point in time, pt is at a sed. work cap. part time at 4 hours max. Please advise. Otherwise cont. [with] WTP (Work Tolerance Program) to [increase?] hours to full time."

Dr. Shirley's office notes of his examination of Gadson the next day, September 28, indicate that while Gadson was achieving some improvement in neck pain, he continued to have cervical pain and dysfunction extending into his shoulder area. Dr. Shirley further noted that Gadson was unable to continue in the work tolerance program due to pain and intolerance to medications for pain. Dr. Shirley's assessment, based on the physical therapist's capacity evaluation and his own knowledge of Gadson's condition, was that Gadson was "totally disabled from significant gainful employment." While Dr. Shirley's opinion is not conclusive as to disability under the statute, it is nevertheless

10

to be considered as part of the evidence in making the determination.[2]

A plausible interpretation of the physical therapy note, particularly in light of Dr. Shirley's examination notes the next day, does not provide substantial evidence that Gadson was then capable, or would soon become capable, of performing a full range of sedentary work activities. Because an ALJ is not qualified to assess a claimant's residual functional capacity based on the bare medical record, evidence must exist in the record to support his or her findings. Berrios Lopez, 951 F.2d at 431.

In the motion for affirmance, the Commissioner points to the evaluation by a Disability Determination Services physician dated December 10, 1993, which in turn was based on Gadson's medical records, that found a residual functional capacity for light work activity without restrictions. The evaluation was affirmed by a second DDS physician's review of Gadson's medical record on June 23, 1994.

Because the ALJ did not mention the DDS evaluations in his decision, it is unclear whether he relied on the evaluations, and if so, whether he employed the process prescribed at 20 C.F.R. § 416.927(f). The DDS evaluations are of the ordinary type, that is, a series of checked boxes indicating functional capacity, but also include some supporting medical conclusions which might add

---

[2] A treating physician's opinion as to the claimant's medical condition and the nature and severity of his impairments is entitled to considerable weight under appropriate circumstances, 20 C.F.R. § 416.927(c), but an opinion of disability is not controlling, 20 C.F.R. § 416.927(e).

11

to the significance of the evaluation.  See Berrios Lopez v. Secretary of H.H.S., 951 F.2d 427, 431 (1st Cir. 1991).  However, the last functional capacity assessment in Gadson's record found him limited to sedentary work for a maximum of a four hour period.  The DDS physician did not explain his differing assessment, and, to the contrary, notes that Gadson "has continued to have problems with neck and upper back pain.  Physiotherapy and medication have not resulted in significant improvement."  Under these circumstances, the DDS evaluation is entitled to only passing weight and does not provide the substantial evidence necessary to support the ALJ's finding.

Thus the more reliable record evidence of Gadson's residual functional capacity appears to be the physical therapy report from September 1993, which does not support the ALJ's assessment of Gadson's prospective improved capabilities.  The record evidence demonstrates that in September 1993 Gadson had a capacity for sedentary work limited to a four-hour period each day, and the Commissioner has not demonstrated that evidence in the record establishes that his capacity increased thereafter.

Although part time work can in some circumstances qualify as substantial gainful activity, see 20 C.F.R. §§ 416.973, 416.974, the Grid is not an appropriate shortcut for the vocational aspect of the Commissioner's burden at step five if a claimant is not capable of a full range of activity at the particular exertional level.  See Heggarty, 947 F.2d at 996; see also Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987).  Therefore, the Commissioner

12

has not carried his burden at the fifth step to show that the claimant is capable of doing other work. Accordingly, the decision denying benefits must be reversed and remanded for further consideration of Gadson's work capabilities.

## B.  Remand

The ALJ's finding that Gadson was able to perform a full range of sedentary work, despite his complaints of back, neck, and chest pain and weakness, was apparently influenced by his conclusion that Gadson's subjective complaints of pain were not credible. The ALJ also found that the record did not demonstrate that Gadson suffered from a severe mental impairment. On remand, the following deficiencies in the Commissioner's decision, based on the ALJ's credibility and mental impairment determinations, are also noted for correction.

### 1.  Credibility

A claimant's subjective complaints are evaluated in light of the Avery factors. Avery v. Secretary of H.H.S., 797 F.2d 19 (1st Cir. 1986). Under Avery, the ALJ was required to consider: "(1) the nature, location, onset, duration, frequency, radiation, and intensity of pain; (2) any precipitating or aggravating factors; (3) the type, dosage, effectiveness and adverse side-effects of any pain medication; (4) any treatment, other than medication, for the relief of pain; (5) any functional

13

restrictions; and (6) the claimant's daily activities."  <u>Dedis v. Chater</u>, 956 F. Supp. 45, 53 (D. Mass., 1997).

Although Gadson's testimony generally covered the <u>Avery</u> factors, the ALJ did not specifically address the factors in his decision.  In addition, some of the ALJ's specific credibility determinations are not entitled to deference since appropriate consideration of the factors and the record evidence would not support the ALJ's determination.  See <u>Frustaglia</u>, 829 F.2d at 195.  For example, Gadson's testimony that he cannot sit in one place for an extended time and that he moves position often to relieve back pain is supported in the record and not contradicted by his testimony pertaining to his daily activities.[3]  The ALJ also noted that Gadson seemed to feel he was capable of work activity because he continued to seek vocational rehabilitation services.  While the record indicates that Gadson has tried rehabilitation programs, it also reveals his lack of success.  His unsuccessful attempts to find employment does not evidence his capacity to engage in work activity.

## 2.  Mental Impairment

Gadson also contends that the ALJ did not properly assess his mental impairment as required by 20 C.F.R. § 416.920a.  The

---

[3]  The ALJ's inference that because Gadson did not complain of pain during the trip to Chicago to attend his brother when he died, he was able to sit for long periods of time without pain, is unwarranted.  <u>See, e.g.</u>, <u>Nelson v. Bowen</u>, 882 F.2d 45, 49 (2d Cir., 1989) (claimant's ability to withstand back pain during four-hour bus ride not indicative of ability to work).

14

regulation initially requires that the same five sequential steps applicable to a disability determination be applied to determine whether a mental impairment exists. § 416.920a(a). In addition, evidence of a mental impairment must be evaluated through a prescribed procedure which is to be recorded on a document known as a psychiatric review technic form ("PRTF") and appended to the decision. § 416.920a(b)(1) and (d)(2). If an initial determination is made that a mental impairment exists, additional procedures must be followed and recorded on the PRTF. § 416.920a(b)(2),(3) and (c).

In this case, Gadson's treating physician, Dr. Florio, referred him to Dr. Frank Birmingham in December 1994 for psychotherapy. Dr. Birmingham met with Gadson twice in December. He diagnosed his condition as "adjustment disorder with depressed mood" and "depression." In Dr. Birmingham's letter dated January 23, 1995, he noted Gadson's mental health issues as well as a deficiency in his cognitive and manual skill. He concluded that Gadson's psychological condition would make it "all but impossible to find and maintain employment at present."

In his decision, however, the ALJ found, without explanation, that "[t]here is no discrete mental impairment in this record nor is there impact on basic work activities from [Gadson's] mental state." The ALJ's conclusion is contrary to the record evidence and fails to follow the prescribed procedure. On remand, the ALJ must properly assess the evidence of mental impairment, including appropriate use of a PRTF. If the evidence

15

of record is deemed to be insufficient, the ALJ must fulfill his obligation to supplement the record as necessary.  <u>See, e.g.</u>, 42 U.S.C.A. § 421(h); <u>Heggarty</u>, 947 F.2d at 997; <u>Carter v. Chater</u>, 73 F.3d 1019, 1022 (10th Cir. 1996).

## Conclusion

For the foregoing reasons, the claimant's motion to reverse the decision of the Commissioner (document no. 8) is granted, the Commissioner's motion to affirm (document no. 10) is denied, and the case is remanded for further administrative proceedings.  The clerk of court is directed to close the case.


**SO ORDERED.**


_____
Steven J. McAuliffe
United States District Judge

August 26, 1997

cc:  Elizabeth R. Jones, Esq.
     David L. Broderick, Esq.

16