**Kurt KRATMAN, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner, Social Security Administration, Defendant.**

**Civil Action No. 04–10244–MBB.**

United States District Court,
D. Massachusetts.

June 30, 2006.

Michael J. Kelley, Law Office of Michael J. Kelley, Boston, MA, for Plaintiff.

Rayford A. Farquhar, United States Attorney's Office, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION TO REVERSE OR REMAND THE DECISION OF THE COMMISSIONER (DOCKET ENTRY # 6); DEFENDANT'S MOTION FOR ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (*DOCKET ENTRY # 8*)

BOWLER, United States Magistrate Judge.

Pending before this court are cross motions by the parties, plaintiff Kurt Kratman ("Kratman") and defendant Jo Anne B. Barnhart, Commissioner of the Social Security Administration ("Commissioner"). Kratman filed a motion to reverse the Commissioner's decision or, in the alternative, to remand the case under 42 U.S.C. § 405(g). (Docket Entry # 6). The Commissioner moves for an order affirming the denial of benefits. (Docket Entry # 8). On June 5, 2006, this court held a hearing on the motions (Docket Entry ## 6 & 8) and took the matter under advisement.[1]

### *PROCEDURAL HISTORY*

On September 12, 2002, Kratman filed an application for disability insurance ben-

1. Although a 2004 case, it was not reassigned to this court until May 9, 2006.

efits ("DIB") with the Social Security Administration ("SSA"). (Tr. 89–95). Kratman alleged an inability to work because of a burst or compression fracture of his T12 vertebra and lower disc herniations suffered during a fall on September 17, 2001. (Tr. 89 & 117). The SSA denied Kratman's DIB application on October 29, 2002, and on January 27, 2003, the SSA also denied Kratman's timely request for reconsideration. (Tr. 57–60 & 62–65). On March 17, 2003, Kratman filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 66). The ALJ held a hearing on July 14, 2003. (Tr. 30–54). Kratman and a vocational expert ("VE") testified at the hearing. *Id.* After the ALJ issued an unfavorable decision to Kratman on October 29, 2003 (Tr. 12–29), Kratman filed a request for the SSA Appeals Council ("Appeals Council") to review the ALJ's decision. (Tr. 10–11). On January 14, 2004, the Appeals Council denied Kratman's request for review and the ALJ's decision became the final decision of the Commissioner. (Tr. 6–9). Kratman then petitioned this court for a reversal or remand pursuant to 42 U.S.C. § 405(g).

### FACTUAL HISTORY

Kratman was born on November 6, 1958, and was 44 years old at the time of the ALJ hearing. (Tr. 33). He graduated from high school and had approximately a year of college education. *Id.* Kratman's past relevant work experience was as a home repair contractor (Tr. 103 & 118) but he did not work between the time of his accident and the ALJ hearing. (Tr. 34).

Kratman went to the emergency room of Salem Hospital on September 17, 2001, after "having fallen and struck his low back area." (Tr. 152). X-rays of Krat-

man's lumbosacral and thoracic spine were taken that day. *Id.* The next day Kratman saw Charles G. Brennan, M.D. ("Dr.Brennan"), an orthopedist, and x-rays revealed a "burst" or a significant compression fracture of T12 with about a 20% or 30% loss of vertebral height anteriorly and some comminution of the superior end plate of T12. (Tr. 164). On September 20, 2001, Dr. Brennan admitted Kratman to Salem Hospital where he saw Sidney Paly, M.D. ("Dr.Paly") for a neurosurgical consultation. (Tr. 165). Dr. Paly found that straight leg raising was "exceedingly" painful for Kratman but no sensory or motor deficits were noted. (Tr. 168). After a follow up visit on October 5, 2001, Dr. Brennan wrote that Kratman's pain "is markedly diminished" but that a CT scan and MRI showed about a 30% involvement of Kratman's spinal canal from retropulsion of bone fragments at the T12 level. (Tr. 163).

On October 30, 2001, Dr. Brennan reported pain in Kratman's left leg and calf, normal straight leg raises and the compression fracture healing without increasing kyphosis [2] at the fracture site. (Tr. 163). Kratman continued to complain of left leg pain on November 8, 2001, but a neurological examination was still "perfectly normal." (Tr. 162). On December 4, 2001, Kratman complained of pain in both legs and a "sudden sharp mid back pain" when trying to lift. An MRI showed a burst fracture of T12, a disc bulge at L4–5 and probable disc rupture at L5–S1 with possible root compression bilaterally. Dr. Brennan did not observe objective evidence of motor root compression. *Id.*

Three months later Kratman was "much better," although he continued to complain

---

**2.** "Kyphosis" refers to "[a]ngular curvature of the spine." *Blakiston's Gould Medical Dictio-* *nary,* p. 731 (4th ed.1979).

of back stiffness and soreness and thigh pain on both sides. (Tr. 162). Dr. Brennan believed that Kratman should be encouraged to get back gradually to full time activities. *Id.* One month later, on April 4, 2002, Kratman was trying to perform construction work but was "having difficulty" and complaining of left mid-back pain. (Tr. 161). Dr. Brennan therefore recommended a short course of physical therapy. On April 29, 2002, Kratman said he "just [could not] work through the pain" and continued to complain of low back and left leg pain. Kratman moved slowly around the office and had mild limitation of forward flexion but no "reproduction of leg pain with spine motion." Dr. Brennan encouraged him to try and increase activity within his comfort range. *Id.*

By May 10, 2002, Kratman had returned to work and "immediately got back the left anterior thigh pain, and again [was] disabled," according to Dr. Brennan. (Tr. 160). Kratman was limping, had difficulty putting weight on his left leg and had marked limitation of flexion. On June 26, 2002, Kratman complained of severe back pain, acute low back pain when working in a semi-bent position and occasional pain in both legs. There was no objective evidence of motor neuropathy although Kratman had difficulty doing heel and toe walking and physical therapy had not helped his condition. Dr. Brennan concluded that Kratman was "probably [at] an end result and has probably come close to reaching maximum medical improvement with permanent disability related to his burst fracture." *Id.*

On August 7, 2002, Dr. Brennan concluded that Kratman was "unable to work in the capacity that he normally works." (Tr. 197). Kratman had persistent mid back pain when sitting or standing for long periods of time and when working. During a September 10, 2002 visit to Dr. Brennan, Kratman used a cane, he was listing to the left side, he had "significant lumbar spasm on flexion and lateral bend" and he had reported acute back and right leg pain and some urinary incontinence. By September 23, 2002, however, Kratman was "dramatically better" and his back and leg pain were "substantially better." *Id.*

On October 24, 2002, Marcia Lipski, M.D. ("Dr.Lipski"), a gynecologist, reviewed Kratman's records and assessed his residual functional capacity ("RFC"). (Tr. 177–184). Without examining him Dr. Lipski opined that Kratman could lift ten pounds frequently and 20 pounds occasionally. (Tr. 178). In contrast, on January 9, 2003, David Cohen, M.D. ("Dr.Cohen"), a neurologist, at the request of the Disability Determination Service ("DDS") (Tr. 23), examined Kratman and concluded that he "cannot lift or carry 10 pounds." (Tr. 188). Dr. Cohen noted that Kratman's "pain seems out of proportion to the findings" but "he has global restrictions in his local motor function." Also, he "can hardly carry himself as he stumbled along here, and he is unable to stand or walk at all for any length of time in answer to these questions." *Id.* Two weeks later, on January 23, 2003, William P. Straub, M.D. ("Dr. Straub"), an advising physician to the DDS (Tr. 23), reviewed Kratman's records and concluded that Kratman could lift ten pounds frequently and 20 pounds occasionally. (Tr. 190–195). Dr. Straub included eight lines of analysis in his report. *Id.*

On April 10, 2003, Peter Ofman, M.D. ("Dr.Ofman"), an internist, conducted a physical of Kratman and diagnosed him with thoracic back pain. (Tr. 206). Next, on May 8, 2003, Richard Clough, P.A. ("Clough") examined Kratman who reported pain in his toes, more often on the right than the left toes, and pain in his rib cage, more often on the left than the right side. (Tr. 203). Clough suggested that Kratman

obtain a reevaluation by an orthopedic surgeon. (Tr. 204).

On May 13, 2003, Kratman visited Steven Hollis, M.D. ("Dr.Hollis"), an orthopedic surgeon, for an orthopedic consultative examination. (Tr. 201–203). Kratman reported that he was taking Vioxx, Tylenol, and baby aspirin, that he had pain in the lower thoracic area, and that he experienced an electric shock type of sensation when reaching for a one gallon jug of milk in the refrigerator. (Tr. 201). Dr. Hollis noted that Kratman moved slowly and appeared uncomfortable and diagnosed him with chronic thoracic pain. (Tr. 201–202).

Finally, on June 18, 2003, Kratman saw Gail Gazelle, M.D. ("Dr.Gazelle") and reported constant pain that gets worse as the day progresses and after sitting for long periods of time. (Tr. 199). Kratman also described the pain as aching and throbbing with shooting pains across his back after any change in position. Dr. Gazelle diagnosed Kratman's pain as chronic severe pain and recommended Amitriptyline and water therapy. *Id.*

### DISCUSSION

#### A. *Jurisdiction and Standard of Review*

■ When the Appeals Council denies review, the ALJ's decision becomes the Secretary's final decision. 20 C.F.R. §§ 404.981 & 416.1481. This court has the power to affirm, modify or reverse the ALJ's decision, with or without remanding the case for a rehearing. 42 U.S.C. § 405(g). The ALJ's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Manso–Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 16 (1st Cir.1996). The ALJ's findings of fact are not conclusive, however, "when derived by ignoring evidence,

misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999). Moreover, the ALJ cannot ignore "the 'body of evidence' opposed to his view." *Dedis v. Chater*, 956 F.Supp. 45, 51 (D.Mass.1997). This court determines "whether the final decision is supported by substantial evidence and whether the correct legal standard was used." *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir.2001).

■ Substantial evidence is more than a scintilla of evidence that a reasonable person could find sufficient to support the result. *Musto v. Halter*, 135 F.Supp.2d 220, 225 (D.Mass.2001) (citing *Rodriguez v. Secretary of Health and Human Services*, 647 F.2d 218, 222 (1st Cir.1981)). "Even if the record could arguably support a different result," this court must affirm the ALJ's conclusion if supported by substantial evidence. *Rodriguez Pagan v. Secretary of Health and Human Services*, 819 F.2d 1, 3 (1st Cir.1987).

#### B. *Disability Determination*

The ultimate question is whether Kratman is disabled within the meaning of 42 U.S.C. § 423(d). That provision defines disability as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The impairment must be of such severity that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." *Deblois v. Secretary of Health and Human Services*, 686 F.2d 76, 79 (1st Cir.1982) (quoting 42

U.S.C. § 423(d)(2)(A)). The Social Security Act and regulations thereunder, 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-(v), apply a five step test to determine whether a claimant is disabled for the purposes of the Act. *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6–7 (1st Cir.1982).[3]

Under the first step, if a claimant is currently employed, he or she is automatically considered not disabled. *Goodermote*, 690 F.2d at 6. If the claimant is not working, the decision-maker moves to the next question. Under the second step, the ALJ asks whether the claimant has a severe impairment. *Id.* A severe impairment meets the durational requirement, see 20 C.F.R. § 404.1509, and "significantly limits your physical or mental ability to do basic work activities."[4] 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment he or she is found not disabled. *Goodermote*, 690 F.2d at 6. If the claimant is severely impaired, the third step applies. *Id.*

Under the third step, the ALJ asks whether the claimant has an impairment equivalent to one listed in appendix 1, subpart P, part 404 of the Code of Federal Regulations. 20 C.F.R. § 416.920(a)(4)(iii); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant has a listed impairment or an impairment equivalent in severity to a listed impairment, the claimant is considered disabled. *Goodermote*, 690 F.2d at 6. If the claimant's impairment does not meet a listed impairment then the decision-maker considers the claimant's RFC to perform work under the fourth step. 20 C.F.R. § 404.1520(e).

Under the fourth step, the ALJ considers whether the claimant has the RFC to do his or her past relevant work. *Id.* Past relevant work is work that the claimant has done in the last 15 years. 20 C.F.R. § 404.1560(b)(1). If the claimant can still do past relevant work, then he or she is not disabled. *Goodermote*, 690 F.2d at 7. If the claimant cannot do past relevant work, then the fifth step applies. *Id.*

Under the fifth step, the ALJ asks whether the claimant's RFC, age, education and work experience indicate that the claimant could work another job in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.*

■ Applying the foregoing sequential analysis, Kratman had not engaged in substantial gainful activity since the alleged onset of disability. (Tr. 28). Thus, the ALJ correctly proceeded to step two of the analysis.

■ At the second step, the ALJ found that "claimant's back pain due to T12 burst fracture is a severe impairment." (Tr. 28). After finding a severe impairment, the ALJ correctly proceeded to the third step.

■ At the third step, since Kratman did not allege that his condition met or equaled a listed impairment, the ALJ correctly concluded that the analysis would proceed to the issue of RFC at the fourth step. (Tr. 19).

---

**3.** The analysis is the same for Social Security Insurance and Social Security Disability Insurance. See, *e.g.*, *Bazile v. Apfel*, 113 F.Supp.2d 181, 185 (D.Mass.2000).

**4.** Basic work activities include:
(1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.
20 C.F.R. § 404.1521(b).

■ At this fourth step, claimants have the burden of showing that they can no longer perform past work because of their impairment. *Manso–Pizarro*, 76 F.3d at 17. The ALJ included an extensive recapitulation of Kratman's testimony regarding his impairments. (Tr. 24–25). Based on this testimony and the various medical assessments regarding Kratman's condition, the ALJ concluded that "claimant is unable to perform any of his past relevant work." (Tr. 28).

During his step four analysis, the ALJ discussed Kratman's testimony and credibility, various medical reports relating to Kratman's RFC and the testimony of the VE. (Tr. 19–26). These factors led to the ALJ's conclusion that Kratman could not perform any past relevant work. (Tr. 28). Neither party disputes this conclusion. The ALJ also applied his analysis of those factors in his step five analysis, though, and the parties do dispute the ALJ's conclusions in that section.

In his step five analysis, the ALJ concluded that Kratman "is capable of performing a significant range of light work as defined in 20 C.F.R. [§ ] 404.1567." (Tr. 27). Additionally, the ALJ concluded that "considering the claimant's age, educational background, work experience, and residual functional capacity, he is capable of making a successful adjustment to work that exists in significant numbers in the national economy" and is thus not disabled. (Tr. 27).

### C. *Errors in the ALJ's Analysis*

The ALJ erred in his analysis of the factors relating to Kratman's RFC and his ability to do light work and, thus, his ability to perform work in the national economy. Specifically, the ALJ did not cite substantial evidence on which he based his decision to discredit Kratman. He also ignored the evidence from Dr. Cohen's

report (Tr. 188), failed to provide a meaningful discussion of the *Avery* factors, discussed *infra*, and failed to support his conclusion that Kratman could perform substantially all of the activities that comprise light work.

■ The first deficiency of the ALJ's decision was that it lacked specific facts and substantial evidence to justify the ALJ's conclusion that Kratman's testimony should be discredited. "Credibility determinations ... must have the support of substantial evidence," *Rohrberg v. Apfel*, 26 F.Supp.2d 303, 309 (D.Mass.1998), and the "ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve the [claimant]." *Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 (1st Cir. 1986).

The ALJ addressed Kratman's credibility in conclusory fashion. First, the ALJ opined that "claimant's complaints regarding the severity and the duration of his pain are inconsistent with the written record." (Tr. 25). The ALJ then listed some of Kratman's complaints such as his inability to lift, push or pull anything and his inability to stand for more than "several minutes." (Tr. 25). After this brief review the ALJ simply concluded, "I find that this description of his condition and the degree of pain is inconsistent with the treatment record." (Tr. 25). The ALJ did not support this conclusion with any specific or even general examples.

■ Kratman's reports of pain during various medical visits could have formed the basis of a credibility argument but the ALJ did not mention credibility when he discussed the visits. The ALJ noted that Kratman reported pain on his left side during the April 4, 2002 visit to Dr. Brennan (Tr. 22) and that he reported pain on his right side during the January 9, 2003

visit to Dr. Cohen "although records from Dr. Brennan ... reported pain on his left side." (Tr. 23). If the ALJ was suggesting that these varying reports of pain were contradictory and undermined Kratman's credibility, he did not do so explicitly. Additionally, if the ALJ sought to conclude that it would be unlikely for someone in Kratman's condition to feel pain on only one side and then pain on the other side in the future, the ALJ failed to cite any medical authority for that conclusion. As in *Rohrberg*, this court "will not save [a] decision by inserting the basis for a finding where there was not substantial evidence to support it." *Rohrberg*, 26 F.Supp.2d at 310. Accordingly, the ALJ did not cite substantial evidence to support his conclusion regarding Kratman's credibility.

 When assessing the credibility of a claimant's asserted subjective symptoms, the ALJ must consider a series of factors. *Avery v. Secretary of Health and Human Services*, 797 F.2d 19, 23 (1st Cir.1986). These factors are commonly referred to as the *"Avery* factors" and are outlined in Social Security Ruling 96–7p ("SSR 96–7p") as follows:

1. The individual's daily activities;

2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Farris v. Barnhart*, 2002 WL 449289 at * 3–4 (D.Me. March 25, 2002) (quoting SSR 96–7p); see also 20 C.F.R. § 404.1529(c)(3).

 The ALJ in this case did mention evidence related to the *Avery* factors. (Tr. 22–25). For example, the ALJ referred to Kratman's assertions that he does not drive, that he lays in a recliner most of the day, that he needs help to dress himself, that he has pain in his legs and back, that he takes five pills a day, that he gets an upset stomach from his medication, that he uses a heating pad all the time and that he cannot lift, push or pull anything. *Id.* After this lengthy discussion, the ALJ concluded that "considering all the evidence, I find that at all times since the alleged onset date the claimant has had the [RFC] to lift ten pounds frequently and twenty pounds occasionally." (Tr. 25). Nowhere in the ruling did the ALJ mention how he decided to disbelieve Kratman regarding his lifting ability or his other claims related to the *Avery* factors. An RFC determination must include "a discussion of why reported daily activity restrictions are or are not reasonably consistent with the medical evidence." *Avery*, 797 F.2d at 29. The ALJ did not include any such discussion.

 The ALJ also erred because he "cannot simply ignore the 'body of evidence opposed to his view.'" *Dedis*, 956 F.Supp. at 51. In making his RFC determination, the ALJ ignored various statements and anecdotes supporting Kratman's position on his inability to lift ten pounds frequently and 20 pounds occasionally. First, in his disability report in Sep-

tember of 2002, Kratman wrote that he "can't lift anything." (Tr. 117). Next, on October 2, 2002, Kratman wrote that he "can't push the vacume [sic]" (Tr. 131) and that he "can't even pick up my 3 year old nephew at 20 lbs." (Tr. 134). Finally, during Kratman's testimony at the ALJ hearing he stated that, "I don't lift any-thing," and he recalled that, "I tried to pick up a gallon of milk out of the refriger-ator and I thought I got electrocuted." (Tr. 42). The ALJ ignored this body of evidence opposed to his view when he dis-credited Kratman's subjective assertions of pain and the ALJ failed to provide sub-stantial evidence on which he based his credibility determination.

The ALJ also ignored crucial evidence from Dr. Cohen's report. (Tr. 187–188). After Kratman's visit on January 9, 2003, Dr. Cohen concluded that Kratman "can-not lift or carry 10 pounds." (Tr. 188). Thus, when Dr. Cohen examined him, Kratman did not have the RFC to lift ten pounds frequently. The ALJ did not pro-vide any justification for completely ignor-ing this report that corroborated Krat-man's assertions of his inability to lift ten pounds.

██ Not only did the ALJ fail to pro-vide specific evidence of why Kratman's testimony was not credible and why he should ignore Dr. Cohen's report, but he also failed to resolve the conflict regarding Kratman's ability to do "substantially all" of the activities that comprise "light work." 20 C.F.R. § 416.967(1)(b). Light work in-volves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of ob-jects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and

pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

*Id.* The ALJ relied on Dr. Straub's assess-ments of Kratman's ability to lift ten pounds frequently and 20 pounds occasion-ally (Tr. 191) for his conclusion that Krat-man is "capable of performing a significant range of light work." (Tr. 27).

██ Kratman's testimony and the in-formation in Dr. Cohen's report created a conflict with this evidence, however, and suggested that Kratman could not lift ten pounds frequently and 20 pounds occasion-ally. The ALJ must resolve conflicts in the evidence when he renders his decision. *Irlanda Ortiz v. Secretary of Health and Human Services,* 955 F.2d 765, 766–769 (1st Cir.1991). The ALJ never resolved the conflict between Kratman's testimony, supported by Dr. Cohen's report, and Dr. Straub's conclusions.

Without resolving this conflict regarding Kratman's ability to perform light work, the ALJ erred when he concluded that Kratman could perform work that exists in significant numbers in the national econo-my. (Tr. 27). The ALJ concluded that Kratman could perform such work by rely-ing on the VE's response to his first hypo-thetical. *Id.* This hypothetical was based on the unresolved assumption, however, that Kratman could perform light work. (Tr. 48). The ALJ provided no support for his decision to ignore the body of evidence opposing the view that he adopted. That body of evidence included Kratman's testi-mony, Dr. Cohen's report and the VE's response to the ALJ's second hypothetical.

The ALJ's second hypothetical referred to a person who "would be able to lift items only under five pounds." (Tr. 49). The VE opined that such a person would

not be able to perform work that exists in the national or regional economy. *Id.* The ALJ ignored this evidence from the VE's testimony and did not provide adequate support for doing so. The Commissioner argues that the ALJ did not have to give significant weight to this testimony because for a VE's "answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities." *Arocho v. Secretary of Health and Human Services,* 670 F.2d 374, 375 (1st Cir.1982). The inputs into the second hypothetical did correspond to Dr. Cohen's conclusion that Kratman "cannot lift or carry 10 pounds." (Tr. 188). The ALJ did not provide substantial evidence for his decision to ignore Dr. Cohen's report or for his apparent conclusion that the VE's answer to the second hypothetical question was irrelevant.

The ALJ also failed to establish why he gave greater weight to Dr. Straub's conclusions than Dr. Cohen's conclusions. Dr. Straub was a non-examining physician who made his RFC assessment by reviewing Kratman's file. Reports from non-examining physicians that "contain little more than brief conclusory statements or the mere checking of boxes ... are entitled to relatively little weight." *Berrios Lopez v. Secretary of Health and Human Services,* 951 F.2d 427, 431 (1st Cir.1991). Dr. Straub's RFC assessment consisted of checking boxes and eight lines of conclusory analysis. (Tr. 190–195). The ALJ thereby disregarded the mandate of 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3) which states that the "better an explanation a source provides for an opinion, the more weight we will give that opinion." Dr. Cohen provided a more detailed explanation for his assessment of Kratman by including over 50 lines of detailed findings (Tr. 187–189), culminating in the conclusion that Kratman "cannot lift or carry 10 pounds." (Tr. 188). The ALJ should have given more weight to Dr. Cohen's opinion and he did not adequately explain why Dr. Straub's opinion should be the basis for the ALJ's RFC determination.

### D. *Proper Remedy*

The issue with regard to the remedy is whether this court should reverse the ALJ's decision or remand it for further proceedings. *Seavey,* 276 F.3d at 10–13 (1st Cir.2001); *Freeman v. Barnhart,* 274 F.3d 606, 609 (1st Cir.2001). The court in *Seavey* enumerated that:

> the rule we adopt is that ordinarily the court can order the agency to provide the relief it denied only in the unusual case in which the underlying facts and law are such that the agency has no discretion to act in any manner other than to award or to deny benefits. Put differently, if the evidence and law compelled one conclusion or the other, then the court could order an award of benefits or affirm a denial of benefits.

276 F.3d at 11. More succinctly, "a judicial award of benefits would be proper where the proof of disability is overwhelming or where the proof is very strong and there is no contrary evidence." *Seavey,* 276 F.3d at 11.

Kratman has not shown that the evidence in this case is overwhelming or that it compels an award of benefits. Instead, there is conflicting evidence that the ALJ did not resolve. Thus, a remand is the proper remedy because it would allow the ALJ to "fulfill his role of resolving conflicting evidence, a task which is not ours to perform." *Freeman,* 274 F.3d at 609. On remand, the ALJ should reassess the entire record regarding Kratman's assertions of pain. *Nguyen,* 172 F.3d at 36. If the

ALJ finds that Kratman's testimony regarding his pain is not credible, this conclusion "must be supported by substantial evidence and the ALJ must make specific findings as to the relevant evidence he considered in determining to disbelieve" Kratman. *Da Rosa,* 803 F.2d at 26. Additionally, the ALJ should resolve the conflict between Dr. Cohen's conclusions and those of Dr. Straub and if the ALJ finds that Dr. Cohen's conclusions are not credible, he should explicate his grounds for that decision. *Nguyen,* 172 F.3d at 36.

■ As a final matter, Kratman has requested that this court award him attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. (Docket Entry # 6). This request is premature and, alternatively, fails to provide any affidavit(s) detailing the amount and contemporaneous records to support the requested amount. A party seeking an award of fees shall submit an application within 30 days of final judgment in the action. 28 U.S.C. § 2412(d)(1)(B). A final judgment in Social Security cases is reached when a claimant receives an order for remand pursuant to 42 U.S.C. § 405(g). *Shalala v. Schaefer,* 509 U.S. 292, 296, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). Additionally, in the event Kratman wishes to reapply for an award of attorney's fees, he should first make a good faith effort to reach an agreement with the Commissioner and thereafter, if necessary, submit a timely request fully supported by the necessary records and a supporting memorandum, citing legal authority, *see* LR. 7.1, to substantively justify an attorney's fees award.

## CONCLUSION

In accordance with the foregoing discussion, the Commissioner's motion for an order affirming the decision of the Commissioner (Docket Entry # 8) is **DENIED** and Kratman's motion for an order to reverse or remand the decision of the Commissioner (Docket Entry # 6) is **ALLOWED** but only to the extent it seeks a remand.