**Ramon A. VARGAS–LOPEZ, Plaintiff**

v.

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**Civil No. 06–1335(SEC).**

United States District Court, D. Puerto Rico.

Sept. 25, 2007.

Cristina Munoz–Gandara, Cristina Munoz Gandara Law Office, San Juan, PR, for Plaintiff.

Ginette L. Milanes, Jose M. Pizarro–Zayas, United States Attorney's Office, San Juan, PR, for Defendant.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

This is an action brought under 42 U.S.C. § 405(g), the "Social Security Act." Plaintiff seeks review of the Commissioner of Social Security's ("the Commissioner") denial of social security benefits. The Commissioner filed its Memorandum of Law in support of the decision to deny benefits (Docket # 11) and Plaintiff then filed his own Memorandum of Law (Docket # 14). After reviewing the parties' filings, the record as a whole, and the applicable law, the case will be **REMANDED** for further proceedings consistent with this Opinion.

### Standard of Review

The scope of our judicial review of a Commissioner's final decision is limited both by statute and case law. *See* 42 U.S.C. § 405(g). Section 405(g) provides that the findings of the Secretary "as to any fact, if supported by substantial evidence, shall be conclusive...." In *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting, Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938)), the United States Supreme Court defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 401. Moreover, the First Circuit has held that this determination of substantiality must be made on the record as a whole. *See, Ortiz v. S.H.H.S.*, 955 F.2d 765, 769 (1st Cir.1991).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See, Bowen v. Yuckert*, 482 U.S. 137, 146–47, n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). It is well settled law that a claimant is disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months" 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(a). In making this determination, the ALJ employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *see e.g., Goodermote v. S.H.H.S.*, 690 F.2d 5, 6–7 (1st Cir.1982).

### Procedural and Factual Background

Plaintiff filed for social security disability benefits on February 2002, claiming disability since June 30, 2001. (Tr. 98). His claim was denied initially and on reconsideration. (Tr. 60–71, 74–84). Per plaintiff's request, an Administrative Law Judge (hereinafter ALJ) held a hearing in which Plaintiff and a vocational expert testified, reviewed his case *de novo* and, once again, denied the claim. (Tr. 85, 89–94, 33–57, 21–27). The Appeals' Council later denied Plaintiff's request for review, thus upholding the ALJ's decision and rendering it the

Commissioner's final determination. (Tr. 6–8).

Plaintiff was born on June 1, 1958 and completed high school. (Tr. 99, 37). He used to work distributing photocopying machines; such work entailed driving a truck and unloading and carrying the equipment to its destination. (Tr. 38). In June 2001, Plaintiff stopped working; at the time he was receiving treatment with the State Insurance Fund (hereinafter SIF). (*Id.*).

*Evidence on the record*

The record is full of medical evaluations that were compiled as part of Plaintiff's treatment at the SIF, records pertaining to his diagnosis of prostate cancer, as well as documents produced as part of the disability claim. We highlight several such documents that explain more fully Plaintiff's condition and its relation to his alleged disability.

A psychological evaluation by a SIF doctor, dated November 14, 2001, reveals that Plaintiff complained of constant pain, which precluded him from working, restlessness, sadness, insecurity, anxiety, and sleep problems, among others. (Tr. 180–181). The psychologist observed that Plaintiff was cooperative, with appropriate language and visual contact, oriented in time, place, and person, and with good social judgment. (Tr. 184). However, the psychologist also noted that Plaintiff's affect was depressed and that he was anxious. (*Id.*).

With regards to his physical condition, SIF Progress Notes from November 5, 2001 reveal the following diagnoses: right knee sprain, lumbar sprain, shoulder sprain, bilateral CTS and problems in the left knee. (Tr. 192). Per the notes, Plaintiff was discharged by the orthopedist but was under treatment with a hand surgeon and a nutritionist; there is also a comment about Plaintiff's complaints regarding his emotional state. (Tr. 193). Prior SIF Progress Notes and records pertaining to the SIF file also reveal that Plaintiff underwent hand surgery (Tr. 198) and that he suffered from degenerative joint disease in the right knee (Tr. 205).

The record also contains a neurological evaluation performed by Dr. Rodríguez Aja on May 2002. Per such evaluation, Plaintiff had pain and tenderness in the joints in the hands. (Tr. 254). Dr. Rodríguez Aja noted that Plaintiff had difficulty in the right fist, however, she marked the box for "no hand limitations." (*Id.*) Dr. Rodríguez Aja stated: "pain in the lumbar region is constant and of variable intensity, there is some relief with the medications. He has pain in both knees with numbness of the arms at times and weakness of the hands. He is unable to kneel. He has weakness of the legs. He bathes and dresses on his own. He is unable to lift and carry heavy objects." (Tr. 262) With regards to the neurological exam, Dr. Rodríguez–Aja noted the following: "Does not look acutely or chronically ill. No distress. [ . . . ] cooperative, spontaneous, attention is good. [ . . . ] He was alert, oriented in person, place and time. Good past, recent and immediate memory. Affect is adequate. He was coherent, relevant and logical." (Tr. 266). With regards to Plaintiff's motor skills, Dr. Rodríguez–Aja noted that his tone was normal and that there were no atrophies nor involuntary movements. (Tr. 267). As for sensitivity and column, the comments were that pain and touch were normal, that there were slight lumbar spasms but no swelling, trophic changes, deformity, or contracture. (*Id.*). Dr. Rodríguez–Aja's diagnosis was: "Painful Syndrome of the lumbar region, knees and shoulders. Post–Left Carpal Tunnel Surgery Status of the left elbow. Sprain of the shoulders and knees. Slight lumbar myositis." (Tr. 269).

Plaintiff was also referred for a psychiatric evaluation by the Disability Determination Program of the Social Security (Tr. 271–72). Such evaluation was performed by Dr. Madeline Santos Carlo on May 15, 2002. (Tr. 271–72). Dr. Santos Carlo's report stated, under the heading mental status, that Plaintiff "maintains a cooperative attitude throughout the course of the interview. [...] His visual contact is adequate. He presents disturbances in his psychomotor activity. [...] His affect is adequate to the subject of discussion. [...] At this time there is no evidence of disturbances in perception, delirious ideation, paranoid ideas, and ideas of reference, suicidal or homicidal ideation, blocking or phobias. His self-esteem is poor. He is oriented in person and place, is partially oriented in time." (Tr. 282–283). As for Plaintiff's functional capacity, Dr. Santos–Carlo remarked that Plaintiff did "not present physical limitations, but does present an emotional condition that interferes with his ability to function." (Tr. 286).

There are also residual functional capacity (hereinafter RFC) assessments by physicians who reviewed the record. The physical RFC assessment, subscribed by both Dr. José Pesquera and Dr. Osvaldo Rivera, noted that Plaintiff was able to occasionally lift/carry 50 pounds, that he could frequently lift/carry 25 pounds, that he was able to stand and/or walk with normal breaks for about 6 hours in an 8–hour workday, that he was able to sit with normal breaks for about 6 hours in an 8–hour workday, and that he had no limitations regarding pushing and/or pulling, except for those regarding his capacity to lift and/or carry. (Tr. 316). Per the RFC assessment, Plaintiff was also able to occasionally climb, stoop, crouch, and crawl, and frequently balance and kneel. (Tr. 317). As for the mental RFC assessment, it was done by Dr. Hilario de la Iglesia and reviewed by Dr. Luis Umpierre. (Tr. 297–313). Dr. De la Iglesia concluded that Plaintiff was moderately limited only as to his ability to understand and remember detailed instructions, his ability to carry out detailed instructions, his ability to perform activities within a schedule and maintain regular and punctual attendance, his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, his ability to interact appropriately with the general public, and his ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 297–298). As for the rest of the activities identified in the mental RFC form, Dr. De la Iglesia found that Plaintiff was not significantly limited. (Id.).

*The hearing*

As requested by Plaintiff, the ALJ held a hearing. At such hearing, Plaintiff and a vocational expert, Héctor Guerra–Prados, testified. (Tr. 33–57). Plaintiff testified about his physical and emotional conditions, and the symptoms that he suffers as a consequence of these conditions. He also testified about his diagnosis of prostate cancer. With regards to pain, the following exchange occurred between the ALJ and Plaintiff:

Q. What areas of your body, if any, cause you physical pain?

A. The most it hurts is my knees and my back.

Q. How often do you have the pains in your knees and back?

A. I would say frequently, always, even if I take the medication I always feel the pain.

Q. And when you do have the pain, how would you describe it? Is it a slight or light pain, moderate, moderate severe, severe or very severe?

A. Very severe, specially in my knees because when I get up they crack and that is a very uncomfortable pain.

Q. And the medication that you take, does it alleviate the pain?

A. They alleviate my pain, specially the ones that I take for sleeping. They relax me and especially the Celebrex relieves me a little.

(Tr. 41–42)

As for Plaintiff's physical limitations, prompted by the ALJ's questions, he testified as follows:

Q. Are you affected if you make a lot of movement or exert a lot of effort?

A. Yes.

Q. With regard to your functional abilities, how long can you remain seated at one time?

A. I would say after half an hour, I get up and I move and then I sit down and that can be another while.

Q. If you stand, how long can you remain standing?

A. No much because right away [INAUDIBLE] specially my knees when I am standing.

Q. In terms of time, how long can you remain standing?

A. Standing, I believe ten minutes and then right away I have to be sitting or I have to move because I cannot be still.

Q. If you walk, how long or how far can you walk?

A. Well, to walk it could be 15 minutes. Little by little you see.

Q. Do you have any problems with bending?

A. Yes, very much.

Q. What happens when you bend?

A. Well, when I bend I feel that my upper back hurts, but if I bend squatting right away I feel my knees and they cannot hold my body.

Q. How much can you lift and carry?

A. I could lift 20 pounds

Q. Do you ever help with any of the household chores?

A. Well, if it is simple things such as sweeping because then I get tired and I can rest, like sweeping or small things.

(Tr. 42–43).

As for the vocational expert's testimony, it must be viewed in light of the ALJ's hypothetical situations. The first hypothetical posed by the ALJ was:

Q. Taking into consideration the critical period involved in this case from the alleged onset date of the claimant's impairment, June 30, 2001 and continuing through the date of these proceedings and assuming hypothetically in the first instance that the claimant physically would be limited to sedentary, light or medium work functions—sedentary where he would not have to lift more than ten pounds and most of the work would be done seated, light work where he would lift ten pounds frequently and occasionally 20 pounds, and the work would be done seated and standing or alternating positions. That for medium work, he would have to lift 25 pounds frequently and occasionally 50 pounds and that would necessitate more standing and bending [. . .] That any work that he should have done would not have necessitate fine [sic] fine hand movements. [. . .] That he—with regard to any pain that he may have had while—or would have while performing work activity would be of a tolerable nature and that would not have affected attention and concentration in the performance of work functions. That the claimant would be able to do routine repetitive and simple work functions and to understand, carry out and remember instructions in his judgment in making

work related decisions [. . .] Under these circumstances would he have been able to return to his former work or have performed any other work since June 2001? (Tr. 50–51).

To that hypothetical situation, the vocational expert responded that from the mental standpoint, Plaintiff would not have been able to perform his prior work. (Tr. 52). From the exertional standpoint, the vocational expert stated that in the six months in which Plaintiff developed prostate cancer and was thus circumscribed to light or sedentary work, he would no longer have been able to carry out his prior work. (*Id*). However, the vocational expert stated, upon further questioning by the ALJ that there would have been other jobs which the Plaintiff could have carried out: ampoule filler, bottle cleaner, box assembler, and inspector general or assembler in the electronic industry. (Tr. 52–53). Those jobs, the vocational expert explained, qualify as light unskilled work and exist in sufficient numbers throughout the island. (*Id.*).

As for the second hypothetical situation, the exchange between the ALJ and the vocational expert was the following:

Q. Assume a second hypothetical situation in which everything that the claimant stated with regard to his health is accepted as true, if it could be substantiated by critical evidence of record, then in your opinion would he be able to perform the jobs or any other jobs within the economy?

A. It would be our opinion that he might not be able to perform any type of work according to regulations in terms of doing it on a sustained an [sic] appropriate manner. We consider that kind of interruptions that would be present during his working activity and not within the parameters of what it would be like a 15 minute break two times a day, or during a lunch activity or whatsoever. He was complaining on and off type of complains in terms of his—how do you say? His body—his body [INAUDIBLE] pain in terms of his different areas, like he complains of his hands. He complains of his knees, his elbows, etc, then besides that he mentioned that he did not feel mentally like on an order as we heard to have the appropriate concentration and attention to perform as per his testimony.

(Tr. 54).

After that exchange between the ALJ and the vocational expert, Plaintiff's attorney was given an opportunity to question the witness and, after a brief examination, the hearing concluded.

**The ALJ's Decision**

Engaging in the sequential analysis required of him, *see*, 20 C.F.R. § 404.1520, the ALJ determined (1) that Plaintiff was not working, (2) that his impairments were severe, (3) but not severe enough to meet or medically equal a listed impairment (*see* 20 C.F.R. § 404.1520(d)), (4) that he could not perform his past relevant work, but that, (5) considering his background and residual functional capacity, he could adjust to other work that exists in significant numbers in the national economy. (Tr. 22–27).

Specifically, after describing all of the medical evidence on the record, and particularly the evidence relating to Plaintiff's psychological condition, the ALJ found that Plaintiff retained the RFC for: lifting a maximum of fifty pounds with frequent lifting/carrying of up to twenty five pounds; sitting for six hours and standing/walking, so long as Plaintiff could have regular breaks; occasionally climbing, stooping, crouching, and crawling; Plaintiff's capacity for pushing and pulling was deemed limited because of his impediment

in engaging in tasks requiring constant repetitive movements. (Tr. 25). The ALJ also stated that because of Plaintiff's emotional condition, he could not perform complex or detailed tasks. (*Id.*). The ALJ noted that his RFC assessment was "not exactly in agreement with the [RFC] assessments made by the State Agency consultants who previously reviewed this claim." (*Id.*) The ALJ explained that this was the result of having taken into account the vocational expert's opinion. (*Id.*). The ALJ then went on to explain his finding that Plaintiff could perform a significant range of medium work and cite the particular jobs that the vocational expert had identified as work that Plaintiff could perform and that existed in significant numbers in the national economy. (Tr. 26).

It bears noting that the ALJ did not discuss Plaintiff's subjective complaints about his limitations or pain. In the section "Findings", at ¶ 5, the ALJ stated: "The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision." Although this could be interpreted as a reference not only to Plaintiff's allegations of physical limitations (*i.e.*, how long he could stand, or whether he could bend or stoop) but also his allegations regarding his constant pain, there is a snag. Upon review of the "body" of the decision, there is no discussion of Plaintiff's alleged limitations nor of why the ALJ found them to be only partially credible.

**Applicable Law and Analysis**

■ We address directly the issue of the ALJ's lack of explanation of his finding as to the non credibility of Plaintiff's allegations regarding his limitations—which we interpret to include Plaintiff's allegations of pain—because we find it dispositive. Plaintiff posits in his brief that in order to properly discredit his allegations as to pain, the ALJ had to engage in a multi-prong analysis and explain, in a satisfactory manner, the basis for his decision. Defendant argues, in its brief, that the ALJ is entitled to make credibility determinations with regards to a claimant's allegations of pain.

■ An ALJ is free to determine that a claimant's allegations of pain and exertional limitations are not credible; however, he "must make specific findings as to the relevant evidence he considered in determining to disbelieve the appellant." *Da Rosa v. Sec'y of Health and Human Serv.*, 803 F.2d 24, 26 (1st Cir.1986). Moreover, "in assessing the credibility of a claimant's asserted subjective symptoms, the ALJ must consider a series of factors" commonly known as the Avery factors. *Kratman v. Barnhart*, 436 F.Supp.2d 300, 308 (D.Mass.2006) (*citing, Avery v. Sec'y of Health and Human Serv.*, 797 F.2d 19, 23 (1st Cir.1986)). These factors are:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning the individual's functional limitations and re-

strictions due to pain or other symptoms.

*Id.* (*citing, Farris v. Barnhart,* 2002 WL 449289 at *3–4 (D.Me.2002)).

The ALJ here failed to discuss and apply the Avery factors to Plaintiff's subjective complaints of pain and exertional limitations. Moreover, the ALJ failed to discuss the conflict in the evidence, specifically between what Plaintiff testified were his exertional limitations—which is supported by Dr. Rodríguez–Aja's evaluation—and what the physicians who conducted the RFC assessment concluded were his limitations (*i.e.,* the amount of time he can stand or sit, his ability to bend and kneel, etc.). "The ALJ must resolve conflicts in the evidence when he renders his decision." *Id.* at 309 (*citing, Irlanda Ortiz v. Sec'y of Health and Human Serv.,* 955 F.2d 765, 766–769 (1st Cir.1991)). Finally, although in the "Findings" section the ALJ states that he did not give full credibility to Plaintiff's allegations as to his physical limitations, he failed to explain the bases of such credibility determination.

The determination of what credibility is to be afforded to Plaintiff's allegations regarding his limitations and pain, and the explanation for such determination, is of particular importance in this case. Per the vocational expert's own testimony, if Plaintiff's allegations as to pain and other limitations are accorded full credibility, then he would be unable to perform any type of work. In turn, such a finding would likely result in a disability determination.

Conclusion

Accordingly, this case must be **RE-MANDED.** On remand, there should be a new hearing and, thereafter, the ALJ should make all required findings to support his disability determination, whether favorable to Plaintiff or not. Among the findings that the ALJ must include are:

findings under the Avery factors; if Plaintiff's allegations as to pain and limitations are not accorded full credibility, this must be explained; and the ALJ must address and resolve any conflict in the evidence.

**SO ORDERED.**